**COMMONWEALTH of Pennsylvania**

v.

**Patsy and Carlo BORRIELLO,
Appellants.**

Commonwealth Court of Pennsylvania.

Argued June 2, 1997

Decided July 1, 1997

Albert C. Gaudio, Monessen, for appellants.

Janette Baisley, Donora, for appellee.

Before SMITH and FRIEDMAN, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

This appeal presents the issues of: 1) whether conviction for twenty-six (26) violations of a local building code ordinance violated the owner's due process rights; and 2) whether the court erred in its application of the local building code ordinance to an unsafe building.

Patsy and Carlo Borriello (Borriellos) appeal from the order of the Court of Common Pleas of Washington County (trial court), which found them guilty of twenty-six (26) summary violations of Donora Borough (Borough) Ordinance No. 1244[1] (Ordinance 1244) for failure to comply with the BOCA Code[2] (BOCA Code) as adopted by that Ordinance. We reverse.

Borriellos own a vacant, old dilapidated movie theater located in the Borough's downtown business district. The Borough inspected the structure and found it to be both unsafe and unsanitary under Ordinance 1244. In November 1993, the Borough took action by sending the Borriellos a letter titled "Notice of Property Condemnation," identifying the property and the unsafe conditions, and ordering that no persons be permitted to enter the building. It further advised them of their right to appeal the Borough decision to the Code Enforcement Board of Appeals (Board) and warned that failure to act on the matter could result in further orders from the Borough, specifically orders to demolish the structure.

Borriellos did not respond or attempt repairs, and the Borough issued twenty-six (26) separate citations charging violation of Ordinance 1244—Condemnation under various subsections, including BOCA subsections ES–106.1.1, ES–110.1, ES111.1, and ES–300.3. While the citations generally referred to the owner's refusal to remove the dilapidated structure, only two mentioned that the roof had collapsed and that the building was a safety hazard.

Borriellos appealed to the district justice and then to the trial court. After a *de novo* hearing, the trial court found the Borriellos guilty of twenty-six (26) violations of Ordinance 1244 for failing to comply with the BOCA Code Sections 302, 303 and 801 and imposed fines of $300 plus costs for each summary offense with the provision that the fine would be reduced by 75 percent if the owners raze or repair the structure within thirty (30) days. The Borriellos appeal.[3]

Borriellos cite *Commonwealth v. Cook*, 226 Pa. Superior Ct. 273, 308 A.2d 151 (1973), for the proposition that, because they are penal in nature and deny trial by jury, summary proceedings must be strictly construed and argue that their due process rights were violated because the Borough did not give proper notice or properly charge the BOCA Code sections upon which the trial court decision was ultimately based. The trial court erred in finding Borriellos guilty of Sections 302, 303 and 801 of the BOCA Code, when the Borough did not charge Borriellos or introduce any evidence regarding violations of Section 302, 303 and 801 of the BOCA Code. We agree.

1. Borough of Donora, Pa., Ordinance 1244 (1989).

2. The BOCA National Existing Structures Code/1987 (Second Edition 1987). BOCA is a trademark of Building Officials & Code Administrator International, Inc.

3. Our scope of review in this case is limited to determining whether constitutional rights have been violated or whether the trial court abused its discretion or committed error of law. *Commonwealth v. Karn*, 168 Pa.Cmwlth. 435, 650 A.2d 1176 (1994).

The right to formal notice of charges in a criminal proceeding is guaranteed by the Sixth Amendment to the United States Constitution and is so basic to the fairness of subsequent proceedings that it cannot be waived even if the defendant voluntarily submits to jurisdiction of the court, *Commonwealth v. Goldblum*, 498 Pa. 455, 447 A.2d 234 (1982). Formal accusation and specific charge enables a defendant to properly defend and protect himself from further prosecution of the same offense, and enables the court to determine the sufficiency of the prosecution's case to support a conviction. *Id.*

Consequently, it is well established that the essential elements of a summary offense must be set forth in the citation so that the defendant has fair notice of the nature of the unlawful act for which he is charged, *Commonwealth v. Feineigle*, 690 A.2d 748 (Pa.Cmwlth.1997), and that when a citation contains defects, the court must look to the state rules of criminal procedure for the consequences of that defect, *Commonwealth v. Neitzel*, 451 Pa. Superior Ct. 1, 678 A.2d 369 (1996).

The procedures promulgated by the Supreme Court in Chapter 50 of the Pennsylvania Rules of Criminal Procedure prescribe procedure in all summary cases,[4] and are designed to recognize the importance of prompt notice that a summary offense is being alleged, while also taking account of the minor nature of a summary offense.[5] Rule 53 provides in pertinent part:

**RULE 53. CONTENTS OF CITATION**

(A) Every citation shall contain:

(6) a citation of the specific section and subsection of the statute or ordinance allegedly violated, together with a summary of the facts sufficient to advise the defendant of the nature of the offense charged; Pa. R.Crim. P. 53(A)(6).

However, Rule 90[6] proscribes dismissal for defects in the citation unless the defendants suffer actual prejudice to their rights, *Commonwealth v. McGinley*, 386 Pa. Superior Ct. 547, 563 A.2d 518 (1989). Such prejudice will not be found where the content of the citation, taken as a whole, prevented surprise as to the nature of summary offenses of which defendant was found guilty at trial, *Neitzel*, or the omission does not involve a basic element of the offense charged, *Commonwealth v. Frye*, 357 Pa. Superior Ct. 395, 516 A.2d 38 (1986).

The BOCA Code, as adopted by Ordinance 1244, further provides for notice as follows:

**ES–107.2 FORM:** Such Notice prescribed in Section ES–107.1 shall:

1. Be in writing;

2. Include a description of the real estate sufficient for identification;

3. Include a statement of the reason or reasons why it is being issued;

4. Include a correction order allowing a reasonable time for the repairs and improvements required to bring the dwelling unit or structure into compliance with the provision of this code, and;

5. Include an explanation of the owner's right to seek modification or withdrawal of the notice by petition to an appeal board or appropriate review board.

The Supreme Court has held that the purpose of such notice in the context of a condemnation or demolition action by a municipality is to give owners the opportunity for hearing to litigate the question of whether the property is actually a danger to public

---

4. A summary case is a case in which the only offense or offenses charged are summary in nature. Pa. R.Crim. P. 3. This includes all charged offenses as defined in the Crimes Code, 18 Pa. C.S. § 106(c), or violations of ordinances for which imprisonment may be imposed upon conviction or upon failure to pay a fine or penalty. *See* Comment to Pa. R.Crim. P. 51.

5. *See,* Pa. R.Crim. P., Chapter 50, Procedure in Summary Cases, (Committee Introduction to Chapter 50).

6. Pa. R.Crim. P. 90, provides as follows:

**RULE 90. DEFECTS IN FORM, CONTENT, OR PROCEDURE—SUMMARY CASES.**
A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, citation, summons, or warrant, or a defect in the procedures of this Chapter, unless the defendant raises the defect before the conclusion of the summary trial and the defect is prejudicial to the rights of the defendant.

safety and provide a reasonable opportunity for the owners to make repairs in order to eliminate the dangerous condition. *Keystone Commercial Properties v. City of Pittsburgh,* 464 Pa. 607, 347 A.2d 707 (1975).

In order to determine whether the Borriellos' due process rights were violated, we must first examine the verdict to determine precisely what summary offenses they were found guilty of at trial. We next examine each citation to determine whether the content of each citation, taken as a whole, prevented surprise as to the nature of the summary offense of which the defendant was found guilty at trial.

In the present case, the Borough found the Borriellos "guilty of violation of Donora Borough Ordinance No. 1244 by failing to comply with the 1987 BOCA National Existing Structures Code, including, but not limited to Sections 302, 303 and 801," and fined $300 plus costs on twenty-six (26) separate summary offenses. Ordinance 1244 provides for the adoption of certain BOCA Codes, including those at issue in this case, and for summary fines or imprisonment in accordance therewith. BOCA Sections 302, 303, and 801 describe the owners duty and liability for the maintenance of safe exterior, safe interior and sanitary conditions of the structure, respectively.

The trial court based its verdict on twenty-six (26) separate citations, none of which cited to Sections 302, 303, or 801. These citations were issued on a standardized form used for non-traffic summary offenses which provide five areas for the enforcement officer to identify the nature of the offense designated "Charge," "Nature of Offense," "Statute or Ordinance," "Sec.," and "Remarks." Under "Charge," all twenty-six (26) citations contained "Violation Ord. 1244 Condemnation" or something closely approximating that language. Similarly, all twenty-six (26) citations clearly cited Ordinance 1244 under the designation as the "Statute or Ordinance" and read "Failed to remove dilapidated structure" under "Nature of Offense." Beyond that the similarity ends.

For the designation "Subsection," nineteen (19) citations referenced BOCA Section ES–106.1.1 which, defines an unsafe structure within the context of condemnation, two (2) referenced BOCA Section 300.3, which commands that all vacant structures and land be maintained in a clean, safe, secure and sanitary condition, four (4) made no reference to any BOCA subsection, and one (1) referenced BOCA Sections 110.1 and 111.1. Section 110.1 defines "unlawful acts" as the erection, construction, alteration, extension, repair, removal, demolition, use or occupancy of any structure in a manner contrary or in violation to the BOCA Code, and Section 111.1 provides for demolition, or repair, at the owners option, of an unsafe building where the official deems the building to be beyond repair or construction has ceased for two years. All twenty-six (26) citations noted the owner's refusal to remove the dilapidated structure in the remarks section, but only two mentioned that the roof had collapsed and the building was a safety hazard.

Aside from the four (4) incomplete citations which fail to give adequate notice of any kind, the remaining twenty-two (22) citations presented adequate notice that the Borriellos were faced with condemnation of the structure, but little else. While the order of condemnation carried with it an order not to occupy the building, the Borriellos were never charged with and the record does not support a finding that they in any way occupied the building in contravention of a condemnation order.

Instead, they were convicted of distinctly different offenses related to the failure to maintain the structure pursuant to BOCA Sections 302, 303, or 801. Yet the citations do not contain any discernable order or instruction which would require the Borriellos to repair the structure. Nor did the citations identify, in any meaningful way, the repairs necessary to bring the building into compliance, both of which are necessary elements of a condemnation violation.

We therefore find insufficient nexus between the charges contained in the citations and the provisions relied upon by the trial court to sustain conviction for summary violation of Sections 302, 303 or 801. We further find that the citations lacked sufficient notice to provide a reasonable opportunity

for the owners to make repairs in order to eliminate the dangerous condition without facing conviction.

Accordingly, we reverse on all twenty-six (26) counts charged.

## ORDER

AND NOW, this 1st day of July, 1997, the order of the Court of Common Pleas of Washington County in the above-captioned matter is hereby reversed.