# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania :
:
v. : No. 88 C.D. 2014
: Submitted: June 26, 2015
Ralph Jannini, :
Appellant :


BEFORE: HONORABLE DAN PELLEGRINI, President Judge
HONORABLE P. KEVIN BROBSON, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION BY JUDGE BROBSON                    FILED:  October 15, 2015


Appellant Ralph Jannini (Jannini), *pro se*, appeals from an order of the Court of Common Pleas of Greene County (trial court). The trial court found that the Commonwealth proved that Jannini violated an ordinance of Greensboro Borough (Borough) by covering a sidewalk on his property with rocks, stones, and dirt, and planting a flower garden upon it. The trial court determined that this action constituted the failure to maintain a public sidewalk and assessed a fine of $100.00 plus costs against Jannini. We reverse the trial court's order.

Jannini owns property located on the east side of Second Street in the Borough. The property consists of a lot upon which is sited two buildings—a former church and the former church's parsonage, the latter of which appears to be a two or three-story house located on the northeast corner of Second Street and Clear Street. On May 5, 2014, Arnold Bowser, who was the Mayor of the Borough at that time and until the time of his death, issued a "code violation" citation to Jannini, which identified the alleged violation as "failure to comply with ordinance Article 5, Section 1 of the Boro[ugh] Ordinance from 1885." (Reproduced Record

(R.R.) at 151a.) According to the citation, Article 5, Section 1 prohibits property owners from permitting accumulations of filth, manure, dirt, ashes, coal, boxes, barrels, stone, brush, or lumber on streets, sidewalks, or alleys in the Borough. A magisterial district justice found Jannini guilty of the violation, and Jannini filed a statutory appeal with the trial court.

The trial court conducted a *de novo* hearing on December 9, 2013. The Commonwealth provided the testimony of Jane A. Descutner, who holds the position of secretary/treasurer for the Borough. Ms. Descutner testified regarding her search of the Borough's record books for pertinent ordinances. Ms. Descutner testified that Commonwealth Exhibit number 1 consists of an ordinance adopted in 1924. Part of Exhibit 1 is the hand-copied (by Ms. Descutner) ordinance and the other part of Exhibit 1 appears to be the notice by publication of the Borough's adoption of the ordinance. Section 2 of the 1924 ordinance provides that "[t]he sidewalks of all streets shall be six (6) feet wide including grass plots and curb widths and no sidewalk shall be less than four (4) feet wide." (R.R. at 91a.)

Commonwealth Exhibit number 2, about which Ms. Descutner also testified, is an ordinance the Borough adopted in 1879, which also relates to grading, curbs, and sidewalks, and prohibits the accumulation of filth, manure, dust, ashes, coal, shavings boxes, barrels, stone, brick, lumber or other obstructions on any street, alley, or sidewalk. (Article V, Section 1 of the ordinance of May 6, 1879; R.R. at 86a.)

The Commonwealth also offered the testimony of Darlene Garrett, the Borough manager. Ms. Garrett testified regarding several photographs, which the Commonwealth entered as exhibits, depicting the sidewalk area before Jannini began to place material on the sidewalk, during the process of Jannini placing

2

material on the sidewalk, and after he completed the process and plants began to grow and mature upon the area where the sidewalk had been. (Commonwealth (Cmwlth.) Ex. nos. 3-9.) Although Ms. Garrett could not provide a specific date upon which the photograph depicting Jannini's initial placements of material on the sidewalk was taken, she testified that she first observed Jannini engaging in that conduct on the day when the Borough began a sidewalk project on Clear Street, possibly in 2012. (R.R. at 15a.)

Ms. Garrett testified regarding photographs of the front of the former church and Jannini's yard. (Cmwlth. Ex. nos. 3, 5.) Together, these photographs depict a portion of a sidewalk near steps leading to the former parsonage, material that looks like hay over an area that appears to be a continuation of the sidewalk (Cmwlth. Ex. no. 5), and an area of sidewalk in front of the former church and parsonage. (Cmwlth. Ex. 3.) Ms. Garrett also testified that Commonwealth Exhibit number 7 illustrates the condition of the sidewalk when Jannini first began to move "stuff on to the sidewalk." (R.R. at 16a.) Ms. Garrett, in response to a question from counsel, indicated that Commonwealth Exhibit number 5 illustrates the appearance of the sidewalk when Jannini first "planted" the sidewalk. Ms. Garrett testified that Commonwealth Exhibit number 6, which consists of two photographs taken in September 2013, shows the subject sidewalk as appearing to be completely covered and obscured by maturing plant growth. (R.R. at 15a.)

As testified to by Mary Shine, the president of the Greensboro Borough Counsel, Commonwealth Exhibit number 9 in the certified record depicts a view of the front of the yard of the former parsonage, taken sometime in the 1980s from the perspective of the area of the street in front of the parsonage, depicting the now-covered sidewalk in the condition at the time the sidewalk was

clear. (R.R. at 27a-28a.) In the photograph, it appears that the area that is now covered by plants had contained a stone retaining wall abutting a sidewalk.

Jannini submitted his own testimony and argument in response to the evidence the Commonwealth introduced. While Jannini did provide some factual information, much of his comments during the hearing constituted legal argument. Jannini offered his view that the Mayor of the Borough lacked the power to issue a citation for an alleged violation of an ordinance. Jannini also asserted that the 1924 ordinance, which set forth grading standards for Second Street and sidewalk width, does not specifically provide for and did not order the construction of public sidewalks on Second Street. Jannini contended that the sidewalk was actually a private walkway that was originally used "for off street parking and for getting in and out of locations that do not have driveways." (R.R. at 51a.) Jannini asserted that the sidewalk "was a private walkway that is unique to [that] side of the street," and that the public sidewalk was located on the opposite side of the street. (R.R. at 51a.) Jannini indicated that he investigated all of the deeds relating to the property that were recorded beginning in 1920, and none of the deeds identified a sidewalk on the property. (R.R. at 52a.) Jannini testified that he did not locate any records indicating that any owner of the property had dedicated any portion of it for the purpose of a sidewalk or that the Borough had obtained an easement. (R.R. at 51a.) Jannini testified that he installed his own driveway and "had no further desire or use of having off-street parking, and chose to convert that part of my walkway to a flower bed." (R.R. at 51a.) Under these circumstances, he believes that he cannot be cited for converting his sidewalk to a flower bed.

Jannini also contended that some type of public dedication is required in order to transform a walkway into a public sidewalk. (R.R. at 68a.) Jannini

4

contended that the property is the only property on the east side of the street that has a sidewalk. Jannini suggested that the previous owner had installed the sidewalk as a private improvement of the property. (R.R. at 69a-70a.) Jannini also referred to Defense Exhibits F and F-1, which set forth "assets and opportunities" and reflect existing and proposed improvements to the area (referred to during the hearing as the Greensboro Elm Street Plan). (R.R. at 127a-28a.) Those exhibits appear to show sidewalks only on the side of Second Street opposite to the property.

At the end of the hearing, the trial court opined that the 1924 ordinance provided the standards for streets and sidewalks, and that although the law indicates that the owner of a lot of land owns property up to the edge of the street, a sidewalk constitutes an easement over which the public has a right to walk. The trial court rejected Jannini's factual and legal arguments. The trial court concluded that the Mayor had the authority to issue the citation and that Jannini had violated "Section 1, Article 5 of the ordinance of—it's either 1885 or 1879, by failing to maintain the public sidewalk in front of his property." (Trial Court op. at 3.)

Jannini appealed the trial court's order, and upon the direction of the trial court, filed a statement of errors complained of on appeal. In its Pa. R.A.P. 1925(a) opinion, the trial court opined:

> Although the [B]orough could not point to an ordinance specifically establishing a sidewalk on the western side of Second Street between Clear and Walnut Streets (See Ex. 11), it did ordain, in 1924, that all streets in the [B]orough would measure 28 feet [between] the curbs, with six additional feet for sidewalks and that such sidewalks would be at least four feet wide. The photographs introduced as exhibits clearly show a concrete sidewalk approximately four feet wide in front

5

of the former church and parsonage. The 1980's photograph of the church shows a sidewalk in excellent condition. The [B]orough has the right to open sidewalks and once open, the duty to keep them passable. 53 P.S. § 46801 *et seq.*[1]

(Trial court op. at 2-3.) Thus, the trial court reasoned that because the 1924 ordinance declared that sidewalks should be at least four feet wide and the photograph of the condition of the sidewalk in the 1980s suggests that the sidewalk complied with that requirement, the original sidewalk constituted a public sidewalk that the Borough had, at some point in the past, "opened" under the provisions of the Borough Code, 8 Pa. C.S. §§ 101-3501. The trial court also rejected Jannini's claim that the Mayor lacked the power to issue a citation.

In this appeal,[2] Jannini raises the following primary issues: (1) whether a reference in the citation to an erroneous year of the enactment of an ordinance renders the citation invalid; (2) whether the Mayor had the power to issue the citation; and (3) whether the Commonwealth proved beyond a reasonable doubt that Jannini violated a Borough ordinance.

In *Spontarelli,* we noted that "[i]n summary offense cases, the Commonwealth is required to establish" guilt beyond a reasonable doubt. *Spontarelli*, 791 A.2d at 1258. This court views "all of the evidence admitted at

---

[1] This citation refers to the formerly unconsolidated Chapter 91, Article XVIII of Borough Code, Act of February 1, 1966, P.L. (1965) 1656, 53 P.S. §§ 46801-46806, relating to sidewalks, which was repealed by the Act of April 18, 2014, P.L. 432. The former Chapter 91 is now codified in identical, if not substantially identical, form in Chapter 18 of the recently reenacted Borough Code, 8 Pa. C.S. §§ 1800-1806.

[2] In reviewing a summary conviction matter, where the trial court has taken additional *evidence in de novo* review, our standard of review is limited to considering whether the trial court abused its discretion or committed an error of law. *Commonwealth v. Spontarelli*, 791 A.2d 1254, 1255 n.2 (Pa. Cmwlth. 2002).

trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth." *Id.* "The test of sufficiency of evidence is whether the trial court, as trier of fact, could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt." *Id.*

The content of a citation may determine whether the Commonwealth has satisfied the necessary procedural requirements in seeking to obtain a conviction for an alleged ordinance violation. Pa. R.Crim. P. 403 provides:

> Contents of Citation
>
> (A) Every citation shall contain:
>
> . . .
>
> (6) a citation of the specific section and subsection of the statute or ordinance allegedly violated, together with a summary of the facts sufficient to advise the defendant of the nature of the offense charged.

This Court has held that "it is well established that the essential elements of a summary offense must be set forth in the citation so that the defendant has fair notice of the nature of the unlawful act for which he is charged." *Commonwealth v. Borriello*, 696 A.2d 1215, 1217 (Pa. Cmwlth. 1997), *affirmed*, 723 A.2d 1021 (Pa. 1999). Under Pa. R.Crim. P. 109, however, courts should not dismiss a case "because of a defect in the form or content of a . . . citation . . . unless the defendant raises the defect before the conclusion of the trial in a summary case . . . and the defect is prejudicial to the rights of the defendant."[3] In *Borriello*, we concluded that "[s]uch prejudice will not be found where the content of the

---

[3] Pa. R.Crim. P. 109 is derived in part from former Pa. R.Crim. P. 90.

7

citation, taken as a whole, prevented surprise as to the nature of summary offenses of which [the] defendant was found guilty at trial, . . . or the omission does not involve a basic element of the offense charged." *Borriello*, 696 A.2d at 1217 (altered language added).

In this matter, it appears that Jannini is correct in asserting that the citation erroneously refers to an ordinance enacted in 1885. Rather, as revealed in Commonwealth Exhibit number 2, the ordinance the Borough adopted in 1879 is the one that contains the language included in the citation. Article V, Section 1 of that ordinance prohibits the accumulation of material such as filth and debris on sidewalks in the Borough. The citation clearly indicates that the Commonwealth was asserting that Jannini had violated Article V, Section 1 of an ordinance that prohibits such conduct. In other words, the citation arose from an alleged violation of Article V, Section 1 of the 1879 ordinance. The sole question then is whether the misstatement regarding the year may be excused under Pa. R.Crim. P. 109. In accordance with our holding in *Borriello*, we conclude that the erroneous reference to the year 1885 did not prejudice Jannini, because the content of the citation apprised Jannini of the alleged violation and the omission of the correct year did "not involve a basic element of the offense charged." *Borriello*, 696 A.2d at 1217.

Jannini also contends that The Borough Code does not vest borough mayors with the authority to issue summary citations for alleged ordinance violations. Section 10A07(1) of the Borough Code, 8 Pa. C.S. § 10A07,[4] provides:

---

[4] This provision codifies an identical provision of the formerly unconsolidated Borough Code—Section 1029 of The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, 53 P.S. § 46029.

> The mayor shall have the following duties: (1) To preserve order in the borough, to enforce the ordinances and regulations, . . . and to perform any other duties as shall be vested in the mayor's office by law or ordinance.

Pa. R.Crim. P. 402 provides that "[l]aw enforcement officers shall ordinarily institute summary proceedings by citation." As the Commonwealth notes, Pa. R.Crim. P. 103 defines a "law enforcement officer" as "any person who is by law given the power to enforce the law when acting within the scope of that person's employment." We believe these provisions settle the question. The rules of criminal procedure provide that a law enforcement officer shall institute summary proceedings by issuing a citation and the rules also define a law enforcement officer as someone who by law is given the powers to enforce the law. Because The Borough Code charges mayors with the duty to enforce ordinances, a type of law, the Mayor had the authority in this matter to issue a citation to Jannini for an alleged violation of a Borough ordinance.

The final key issue is whether the Commonwealth satisfied its burden of proof. Jannini contends that the sidewalk that was in front of the former parsonage was not a public sidewalk, but rather it was a private walkway that the former church paid for in order to benefit its congregation. Jannini asserts that evidence in the record supports his assertion that although a sidewalk runs fully along the opposite side of Second Street, the fact that the sidewalk on his side of Second Street only runs along the front of the property supports his claim that the sidewalk was intended only for the benefit of former church congregants and, therefore, was not intended to be for the walking public. Jannini asserts that such evidence supports his claim that the sidewalk that was in front of his property has always been a private, rather than public, sidewalk, and, therefore, he had the right as a property owner to do with the sidewalk as he wished.

9

Part I, Chapter 18 of the Borough Code, 8 Pa. C.S. §§ 1800-1806, sets forth the provisions relating to sidewalks. Section 1801(a) of the Borough Code, 8 Pa. C.S. § 1801(a), provides:

> (1) Any borough may, *by ordinance*, lay out and establish sidewalks, curbs, gutters and surface water drains along any street . . . .
>
> (2) The borough may also require owners of property abutting on any street . . . to grade, construct, drain, pave and repave the sidewalk, curb or gutter and keep them in repair and in safe and usable condition along the property at the grades and under the regulations and specifications as council may prescribe.

(Emphasis added.) This provision authorizes a borough to require, via ordinance, a property owner to construct a sidewalk. This provision does not impose upon a borough a duty to construct or to order a property owner to construct a sidewalk. *Koerth v. Borough of Turtle Creek*, 49 A.2d 398, 400 (Pa. 1946). It does, however, authorize a borough to require that a sidewalk be maintained in a reasonably safe condition. *Id* at 399-400. We note that pursuant to the Borough Code, a "borough may pay all or any part of the cost and expenses of grading and curbing any sidewalk." Section 1804 of the Borough Code, 8 Pa. C.S. § 1804. Furthermore, if a property owner fails to comply with the requirements of Sections 1801 or 1804 of the Borough Code, a borough "may, after notice, cause the grading, paving, repairing, [or] curbing . . . to be done at the cost of the owner," and it "may collect the cost of the work and an additional 10% of the cost, together with all charges and expenses, from the owner." Section 1805(a) of the Borough Code, 8 Pa. C.S. § 1805(a). A borough may even make emergency repairs to a sidewalk. Section 1806 of the Borough Code, 8 Pa. C.S. § 1806.

10

Nothing in Chapter 18, however, may be interpreted as prohibiting a property owner from constructing a sidewalk when the borough did not, through an ordinance, direct that it be constructed. Similarly, nothing in the ordinance prohibits a property owner from removing a sidewalk that it was not required to construct or otherwise have. Thus, at the heart of this matter is whether the Borough required, through an ordinance or otherwise, Jannini's property to have a sidewalk. If not, then the Borough could not cite Jannini for removing his sidewalk by converting it into a flower bed. If, however, Jannini was required by the Borough to have a sidewalk on his property (or if he opted to continue to have a sidewalk by choice), then the Borough would have the authority to cite him for failing to maintain the sidewalk in conformity with the Borough's ordinance.

The trial court inferred that, based on the sidewalk's dimensions, the sidewalk (which dated at least back to the 1980s before Jannini purchased the property), was installed in compliance with the provisions of the 1924 ordinance applicable to sidewalks. This finding, however, does not establish that the Borough required, via ordinance, Jannini's property to have a sidewalk. In addition, no evidence was offered to show that the sidewalk had been dedicated to and accepted by the Borough in such a manner that it became part of the Borough's comprehensive plan for sidewalks. To the contrary, the only exhibits that were entered into evidence that depicted sidewalks of the Borough did not appear to even recognize that a sidewalk existed on Jannini's property.

Under these circumstances, there is no evidence to support a finding that Jannini was required by the Borough, via ordinance or otherwise, to have a sidewalk. Thus, because Jannini is not required to have a sidewalk, the Borough cannot prohibit him from removing his sidewalk. Here, Jannini essentially

11

removed the sidewalk from his property by converting it into a portion of his yard covered by a flower bed.

We note that the ordinance in question prohibits a property owner from allowing accumulations of dirt and other debris on sidewalks and that Jannini, due to the method he used to remove his sidewalk (*i.e.*, covering over his sidewalk with dirt as opposed to digging up the sidewalk), purposefully accumulated dirt and other material on his sidewalk. It is apparent to the Court, however, that the ordinance in question was adopted to ensure that sidewalks in the Borough were free of debris and other material so that they would be safe for use by persons, including the public; the ordinance was not adopted to prohibit a specific manner of removing a sidewalk. Requiring a property owner to keep his sidewalk in a safe condition is different from requiring a property owner to continue to have forever and ever a sidewalk installed by choice. For that reason, we do not believe that the method Jannini used to remove his sidewalk constitutes a violation of the ordinance. For these reasons, the trial court erred in concluding that Jannini violated the Borough's ordinance when he converted his sidewalk to a flower bed.[5]

---

[5] In his dissenting opinion, President Judge Pellegrini writes that "[t]here is no question that the sidewalk is in a dedicated public right-of-way." *Commonwealth of Pa. v. Jannini*, ___ A.3d ___ (Pa. Cmwlth., No. 88 C.D. 2014, filed October 15, 2015) (*Jannini*), dissenting slip op. at 1. While the basis for such a statement is not explained, we surmise that it is based upon the Borough's 1924 Ordinance, which provides, in part, that

> all streets of this Borough shall be improved in the centers thereof a width of twenty-eight (28) feet between the curb lines *and shall have on each side thereof six (6) feet* including the curb width. The sidewalks of all streets shall be six (6) feet wide including the grass plots and curb widths and no sidewalk shall be less than four (4) feet wide.

**(Footnote continued on next page…)**

Accordingly, we reverse the order of the trial court.[6]

_____

P. KEVIN BROBSON, Judge

_____

**(continued…)**

(R.R. at 91a (emphasis added).) The parties, however, do not argue that a public-right-of-way exists. Neither the deed for the property nor maps of the Borough indicate that a public right-of-way exists on the property. (R.R. at 109a-119a; 127a-128a). In fact, the term "right-of-way" is not found within the briefs of the parties or the trial court's order or Pa. R.A.P. 1925(a) opinion. Moreover, even if the six feet of Jannini's property abutting the street constituted a public right-of-way, we would still conclude that there is no evidence to support a finding that Jannini was required to have a sidewalk, as many properties within the Borough do not have sidewalks. The dissent concludes otherwise, however, based upon its misapprehension of the trial court opinion as having held that "once a sidewalk is laid out in the public-right-of way, it becomes part of the public right-of-way and the property owner can make no changes without permission from the municipality." *Jannini*, ___ A.3d at ___, dissenting slip op. at 3. The trial court made absolutely no such pronouncement of the law, and we note that no legal authority is cited for that proposition in the dissenting opinion. To the contrary, the trial court merely observed that a sidewalk constructed by a prior owner of the property appeared to have complied with the Borough's sidewalk requirements and that the "[B]orough has a right to open sidewalks and once open, the duty to keep them passable." (Trial Court op. at 3.) The trial court never analyzed the matter in terms of whether a public right-of-way existed or whether Jannini was required to have a sidewalk on his property. The trial court never found that the Borough opened the sidewalk in question. Thus, the dissenting opinion's position that the Court should affirm this matter on the basis of the trial court opinion is perplexing.

[6] Jannini also contends that his presentation of his defense was hampered by the fact that he could not call as a witness the former Mayor who issued the citation, because he passed away before the hearing. Because the other Commonwealth witnesses appear to have sufficient personal knowledge regarding the facts underlying the Mayor's issuance of the citation, and because, as the trial court noted, the Commonwealth was able to offer sufficient evidence notwithstanding the inability to call the Mayor as a witness, we conclude that Jannini has not established any harm from his inability to call the former Mayor as a witness. Additionally, Jannini has not presented any legal argument to support his claim that the Mayor's testimony was necessary for him to defend against the citation.

13

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No. 88 C.D. 2014 |
| | : | |
| Ralph Jannini, | : | |
| Appellant | : | |

# **O R D E R**

AND NOW, this 15th day of October, 2015, the order of the Court of Common Pleas of Greene County is REVERSED.

_____
P. KEVIN BROBSON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania     :
    :
       v.              : No. 88 C.D. 2014
    : Submitted: June 26, 2015
Ralph Jannini,             :
          Appellant     :


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge


DISSENTING OPINION BY
PRESIDENT JUDGE PELLEGRINI          FILED: October 15, 2015


Greensboro (Borough) is a borough in Greene County on the west bank of the Monongahela River with a population under the 2010 census of 254 people. Moving from Pittsburgh, Ralph Jannini purchased property located on the east side of Second Street in the Borough which was a former church and church parsonage. At the time he purchased the property, there was a "sidewalk" in front of the property. There is no question that the sidewalk is in a dedicated public right-of-way. On the front part of the "sidewalk" there is a fire hydrant.

After he purchased the property, he planted vegetation on both sides of the "sidewalk" so that it was unpassable. As a result, the Borough charged him with permitting accumulations of filth, manure, dirt, ashes, coal, boxes, barrels, stone, brush or lumber on streets, sidewalks or alleys in the Borough which is a violation of Article 5, Section 1 of the Borough Ordinance from 1885. This Ordinance is

handwritten. After Jannini was found guilty before the magistrate, he appealed to the trial court which, after a lengthy hearing, imposed a $100 fine.

The majority reverses because it finds that the Borough did not establish that it had an ordinance that required Jannini to construct a sidewalk under Section 1801(a) of the Borough Code, 8 Pa. C.S. §1801(a), and that he was under no burden to maintain or keep it unobstructed and reversed the trial court.

I am reluctant to even dissent because the simple solution to all of this is for the Borough to order Jannini to build the sidewalk to standard to allow pedestrian passage, even if that solution was to cost him potentially thousands of dollars. I also am reluctant to dissent because, in general, ordinance citations for serious violations do not solve the problem because of their purported criminal nature,[1] and cause

---

[1] The majority applies the "beyond a reasonable doubt" standard applicable to the criminal cases. How to characterize prosecutions for violations of municipal ordinances has been equally troublesome. Generally, most municipalities were only authorized to impose fines and, if the fines were not paid, then an imprisonment could be imposed. At common law, an action brought by the municipality for the violation of a municipal ordinance was considered a civil suit for penalty and the normal civil burdens applied. *Commonwealth v. Carter*, 377 A.2d 831, 832 (Pa. Cmwlth. 1977).

With the promulgation of the then-new Pennsylvania Rules of Criminal Procedure, through definitional changes, what we previously considered civil suits for penalty became penal in nature. Those Rules define "criminal proceedings" as including "all actions for the enforcement of the Penal Laws." Pa. R.Crim.P. 3(g). The penal laws include "any ordinances which may provide for imprisonment upon conviction or upon failure to pay a fine or penalty." Pa. R.Crim.P. 3(1). An ordinance is a "legislative enactment of a political subdivision." Pa. R.Crim.P. 3(g). These definitions (which were in effect in 1976) remove any doubt as to the nature of the instant proceedings; they are criminal proceedings. This was so even though Pa. R.Crim.P. 456(C) provides that imprisonment may only be ordered if the defendant is able to pay the fine and refuses, making the "in default thereof" akin to civil contempt.

**(Footnote continued on next page…)**

charging and proof hurdles to overcome, especially when the fine imposed is only $100, which is disproportionate to the effort extended by the Borough in attempting to abate the violation. In these situations, it would be better for the municipality to file equity actions to enjoin the violation and seek fines under the normal civil burden. If these methods were employed, at least the "problem" would be solved.

Nonetheless, I disagree with the majority because, as the trial court held, once a sidewalk is laid out in the public right-of-way, it becomes part of the public right-of-way and the property owner can make no changes without permission from the municipality. Accordingly, I would affirm on the well-reasoned opinion of the trial court.[2]

_____
DAN PELLEGRINI, President Judge

_____

**(continued…)**

However, a municipal ordinance where imprisonment is not a remedy for a conviction or failure to pay a fine is a civil case and the criminal burdens do not apply. *Town of McCandless v. Bellisario*, 709 A.2d 379, 381 (Pa. 1998). From a review of the record, I am unable to determine whether the ordinance at issue here provides for imprisonment in default of payment of the fine but for the purposes here will assume that it does.

[2] The public's right in the use of the sidewalk has been characterized as an "easement of passage" but it also includes "the powers incident to such a right." *Duquesne Light Co. v. Duff*, 97 A. 82 (Pa. 1916). It need not be improved to be a considered a sidewalk. *Callahan v. A. Wishart & Sons Co.,* 365 Pa. 498, 501, 76 A.2d 386, 388 (1950).