IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rockland Collision Center, Inc.,     :
                    Appellant     :
     :
     v.               : No. 608 C.D. 2024
     : Submitted: July 7, 2025
Commonwealth of Pennsylvania,     :
Department of Transportation,     :
Bureau of Motor Vehicles     :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY JUDGE WALLACE                FILED: December 19, 2025

Rockland Collision Center, Inc. (Inspection Station) appeals from the April 22, 2024 order of the Court of Common Pleas of Philadelphia County (trial court) granting the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Motor Vehicles' (PennDOT) Motion for Reconsideration, thereby denying Inspection Station's appeal and reinstating PennDOT's suspension of Inspection Station's Certificate of Appointment as an Official Safety Inspection Station (Inspection Certificate). On appeal, Inspection Station argues the trial court erred in concluding PennDOT established Inspection Station committed the offenses alleged in PennDOT's order of suspension and in failing to conclude PennDOT violated its procedural due process rights. Upon review, we reverse.

# I. Background

Inspection Station performed vehicle safety inspections under the Inspection Certificate in the City of Philadelphia. *See* Reproduced Record (R.R.) at 29a. On June 1, 2022, PennDOT sent Inspection Station an Order of Suspension of Official Inspection Station (Notice). *Id.* Relevantly, the Notice provided:

> You are hereby notified that your Certificate of Appointment as an Official Safety Inspection Station was suspended verbally May 12, 2022 pursuant to Section 4724 of the Vehicle Code [(Code)].[1] No vehicle safety inspections may be performed at your station during the suspension. Pursuant to 67 Pa. Code § 175.51(a), your Certificate of Appointment will be suspended for one (1) year for furnish, lend, give, sell or receive a certificate of inspection without inspection; two (2) months for failure to give a written receipt or work order to customer, or to list required information on work order; one (1) year for fraudulent record keeping, including the lesser offenses of improper record keeping, careless record keeping and a warning for required tools or equipment missing or broken.
>
> The above violation(s) relate(s) to conduct that occurred on May 12, 2022, at [Inspection Station]. The violations include, but are not limited to, [the inspector] failed to perform inspections on location[; f]ailed to record the required information in MV[-]431[2] [including] brake and tire readings[;] us[ed] inspection stickers out of order[;] record[ed] 9/16 for all tire readings that were entered[; and f]ailed to record brake and tire readings on customer receipts as required. You were also missing a ball joint gauge, inch pound torque wrench, two piece window tint meter and [had a] dead battery in [your] micrometer.

*Id.* The Notice also informed Inspection Station of its right to appeal to the trial court within 30 days of June 1, 2022, and its option to apply for an order of supersedeas from the trial court to have the Inspection Certificate restored during the pendency of an appeal. *Id.* at 29a-30a.

---

[1]  75 Pa.C.S. §§ 101-9805.
[2]  An MV-431, titled "Inspection Record," is the PennDOT form an inspection station must use to document each inspection it completes. *See* R.R. at 114a, 122a, 155a-59a.

Inspection Station appealed the Notice to the trial court on June 15, 2022. *See* R.R. at 3a. Inspection Station also requested supersedeas, which the trial court granted on October 20, 2022, thereby reinstating the Inspection Certificate during the pendency of Inspection Station's appeal. *Id.* at 4a-5a. After several continuances, the trial court held a hearing on Inspection Station's appeal on March 8, 2024. *Id.* at 6a-9a, 110a.

At the trial court's hearing, PennDOT began by presenting the testimony of Dwayne Hunsicker (Hunsicker), a PennDOT vehicle safety inspection station auditor with 35 years of experience performing vehicle safety inspections. R.R. at 111a-12a. The trial court accepted Hunsicker as an expert in vehicle safety inspections. *Id.* at 112a. Hunsicker participated in PennDOT's audit of the Inspection Station on May 12, 2022. *Id.* During the audit, Hunsicker reviewed Inspection Station's records, particularly its MV-431 Inspection Record, and discovered Inspection Station did not complete its MV-431 for numerous inspections and was missing the required information on nearly every inspection. *Id.* at 113a. Specifically, Hunsicker explained "there [are] no tire measurements, brake measurements, [or] check marks for any of the things that [Inspection Station was] supposed to be checking off. The inspection number is not . . . there. Some of [the lines] were not signed. [Some were m]issing [the insurance] policy number; insurance company; [and] registration." *Id.* Hunsicker also noted some of the entries were even missing the mileage, registration information, vehicle identification number (VIN), year, make, model, and owner's information. *Id.*

Hunsicker spoke with the Inspection Station's secretary about the missing information, and she informed Hunsicker she had been very busy and did not have time to enter the inspections on the MV-431. R.R. at 114a. Hunsicker explained

3

that before a vehicle safety inspector applies a new inspection sticker to a vehicle to indicate the vehicle passed its inspection, all aspects of the inspection must be completed. *Id.* Completing the MV-431 is one aspect of the inspection; therefore, Hunsicker testified Inspection Station should not have been applying inspection stickers on vehicles without first completing the MV-431. *Id.*

Hunsicker also spoke with Inspection Station's vehicle safety inspector on May 12, 2022. *Id.* The safety inspector had "some registration and insurance card[s] with a sticker number written on it, with the tire measurement of 9/16." *Id.* at 115a. The safety inspector explained to Hunsicker that all of the tires he measured were 9/16 of an inch. *Id.* Hunsicker explained to the trial court that it is not even "remotely possible" for every tire measurement to be the same and that brake and tire measurements are recorded in intervals of thirty-seconds, not sixteenths. *Id.* at 115a. Similarly, the safety inspector could not explain why the Inspection Station was missing tools that are necessary for performing vehicle safety inspections. *Id.* Ultimately, Hunsicker opined that Inspection Station had not recorded the information it needed to complete all of its incomplete MV-431 entries, and that Inspection Station's records were so "crazy," PennDOT "couldn't make heads or tails of [it or] . . . even do an audit." *Id.* Finally, Hunsicker explained there were multiple PennDOT auditors present at the Inspection Station on May 12, 2022, he was not present for every conversation between PennDOT's auditors and the Inspection Station's employees, and he was not aware PennDOT verbally suspended the Inspection Certificate on May 12, 2022. *Id.* at 116a-17a.

Next, PennDOT presented the testimony of Mark Zmiejko (Zmiejko), a PennDOT quality assurance officer supervisor. R.R. at 117a. Zmiejko, whom the trial court accepted as an expert in vehicle safety inspections, also participated in

4

PennDOT's audit of the Inspection Station on May 12, 2022. *Id.* Zmiejko explained the Inspection Station's deficiencies as follows:

> They had missing and incorrect tools. They had several hundred inspections that were not entered in the MV[-]431 as required. The MV[-]431s that were started had tons of missing information and incorrect information on them.
>
> They had no brake and tire measurements for, I believe, it was 500 [inspections]. I know it was several hundred. When we asked about it, they stated that all the tires, and all the inspections were 9/16. And tires are not measured in [sixteenths], tires are measured in 30 seconds. So there was a large amount of paperwork issues at the [Inspection Station].
>
> . . . .
>
> [W]e had several hundred pieces of paper with just a person's [registration] card and insurance card on it with no brake and tire measurements. There was actually no way for them to . . . make up the inspection book because they did not have the information on those pieces of paper.
>
> And we even asked them how do you plan to make the book proper with this information. They said, well, to be honest with you, the book is all jacked up . . . .

R.R. at 119a. Zmiejko also explained that it was not possible for Inspection Station to perform a proper vehicle safety inspection without the tools that were missing on May 12, 2022. *Id.* at 120a.

PennDOT concluded its presentation of testimony with Anna Yondura (Yondura), an employee of the Parsons Corporation, which PennDOT subcontracts to perform emissions-related vehicle safety inspection audits. *See* R.R. at 120a-21a. The trial court accepted Yondura as an expert in vehicle safety inspections. *Id.* at 121a. Yondura was the third and final auditor who participated in PennDOT's

May 12, 2022 audit of the Inspection Station. *Id.* Yondura explained the Inspection Station's deficiencies as follows:

> So pages [in Inspection Station's MV-431 book] were filled in with customer information, but there were no brake readings, there were no tire readings, there [were] no old odometer[ readings]. There's no dates. There's no signatures. That was on the record-keeping side.
>
> We tried to . . . get through the [MV-431] book, but because all the inspections are not in the book and they are not in any kind of chronological order, it was very hard to follow the book.
>
> So we were unable to figure out what stickers were missing, what stickers were recorded. Numbers were just all over the place. Nothing was in order.
>
> When we got to asking [Inspection Station's Secretary] why is the [MV-431] book not completed? Why did you -- why are there no brake or tire readings?
>
> Her answer was that . . . the mechanics[] don't give them to me; if they don't give them to me, I cannot record them.
>
> When we asked the inspector . . . why were there no brake or tire readings in the [MV-431] book; his answer was, all the tire readings are 9/16. That was it. He never answered why there's no brake readings.
>
> When we asked to see their work orders, all it was was a sheet of paper with [a] photocopy of a driver's — of a registration card and insurance card, and that was it, nothing else; no miles, no readings, no nothing.

*Id*. at 121a-22a.

Yondura also explained that Inspection Station had failed to record over 500 inspections in its MV-431 book, with the last entry being dated in January of 2022. *Id.* at 122a. Finally, Yondura explained the information that Inspection Station did record was not sufficient for a proper inspection. *Id.* Yondura reiterated that Inspection Station's existing records were

6

just pages with customers' name and VIN number [sic], year, make, model and plate number. Some have insurance, some are missing insurance.

I had no idea by looking at this book what date these inspections were performed. There's nothing there.

Who performed the inspection? There's no signature. There's no initials. There's no names. There's nothing.

*Id.* at 123a. Yondura explained PennDOT issued a suspension letter to Inspection Station during the May 12, 2022 audit, and she immediately suspended the Inspection Certificate. *Id.*

In addition to testimony, PennDOT also admitted exhibits, which included Yondura's audit report. *See* R.R. at 32a, 125a. In her audit report, Yondura noted that Inspection Station "was advised to cease all safety inspections." *Id.* at 32a. Yondura also noted in her audit report that she suspended the Inspection Certificate and removed 146 unused inspection stickers from Inspection Station on May 12, 2022. *Id.*

Inspection Station did not present any testimony or evidence before the trial court. *Id.* at 125a. By order filed March 8, 2024, the trial court sustained Inspection Station's appeal, thereby rescinding PennDOT's suspension of the Inspection Certificate. *Id.* at 9a. PennDOT filed a Motion for Reconsideration in the trial court on March 19, 2024. *Id.* On March 27, 2024, the trial court granted PennDOT's motion, vacated its March 8, 2024 order, and listed this matter for a reconsideration argument. *Id.* at 9a-10a. After receiving arguments from the parties, the trial court issued its April 22, 2024 order denying Inspection Station's appeal and reinstating PennDOT's suspension of the Inspection Certificate. *Id.* at 10a-11a. Inspection Station timely appealed the trial court's order to this Court.

## II.     Issues

Inspection Station presents three issues for our review.  First, Inspection Station alleges PennDOT violated its due process rights by failing to cite legal authority in the Notice and by imposing a retroactive suspension without providing a pre-deprivation hearing.  Second, Inspection Station alleges the trial court erred because PennDOT's evidence did not establish any wrongdoing on the date PennDOT provided in the Notice.  Finally, Inspection Station alleges the trial court erred because PennDOT did not prove it engaged in fraudulent recordkeeping.[3]

## III.     Analysis

This Court reviews inspection certificate suspension decisions to determine whether substantial evidence supports the trial court's factual findings or whether the trial court committed an error of law.  *McCarthy v. Dep't of Transp.*, 7 A.3d 346, 350 (Pa. Cmwlth. 2010).  Substantial evidence is "relevant evidence that a reasonable mind, without weighing the evidence or substituting its judgment for that of the fact finder, might accept as adequate to support the conclusion reached." *Snyder v. Dep't of Transp., Bureau of Motor Vehicles*, 970 A.2d 523, 528 (Pa. Cmwlth. 2009) (citation omitted).  "As long as sufficient evidence exists in the record which is adequate to support the finding found by the trial court, as factfinder, we are precluded from overturning that finding."  *Dep't of Transp., Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 875 (Pa. Cmwlth. 1989).  Instead, we defer "to the factfinder who heard the witnesses testify and was in the sole position to observe the demeanor of the witnesses and assess their credibility." *Id.*

In evaluating whether the trial court committed an error of law, "our standard of review is *de novo* and our scope of review is plenary."  *Gorsline v. Bd. of*

---

[3]   We have reframed Inspection Station's issues on appeal to comport with our standard of review.

*Supervisors of Fairfield Twp.*, 186 A.3d 375, 385 (Pa. 2018). "In other words, we do not defer to the [trial court's] conclusions of law, and we reassess the record with a fresh pair of eyes." *Allegheny Cnty. Dep't of Health v. Wilkerson*, 329 A.3d 111, 117 (Pa. Cmwlth. 2024). PennDOT has the burden of proving violations of the Code and its regulations by a preponderance of the evidence. *Firestone Tire & Serv. Ctr., O.I.S. #798 v. Dep't of Transp.*, 871 A.2d 863, 867 (Pa. Cmwlth. 2005).

## A. Due Process

Inspection Station's first issue is whether PennDOT violated its due process rights by failing to cite legal authority in the Notice and by imposing a retroactive suspension without providing a pre-deprivation hearing. Initially, we note the trial court did not err in concluding PennDOT did not impose a retroactive suspension. Yondura testified that when PennDOT's representatives were auditing the Inspection Station, they removed Inspection Station's inspection stickers, thereby rendering Inspection Station incapable of performing vehicle safety inspections. In addition, Yondura testified that she informed Inspection Station's employees the Inspection Certificate was suspended. Thus, substantial evidence supports the trial court's finding that Inspection Station's suspension commenced on the date of PennDOT's audit. The trial court did not commit an error of law in determining this suspension was not retroactively imposed by PennDOT's Notice.[4]

Regarding Inspection Station's argument the Notice failed to properly cite legal authority, we are constrained to agree. Generally, due process demands that "[t]he government cannot revoke a benefit or privilege it has granted unless it affords the affected person notice and an opportunity to be heard." *Ganoe v. Dep't of Transp., Bureau of Driver Licensing*, 247 A.3d 91, 95 (Pa. Cmwlth. 2021) (citing

---

[4] Due to our disposition, we need not address whether PennDOT violated Inspection Station's due process rights by failing to provide a pre-deprivation hearing.

9

*Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970)). Regarding notice of an inspection station's alleged violations, this Court recently explained that "due process requires citation to the statutory or regulatory provisions that were allegedly violated." *Manna v. Dep't of Transp., Bureau of Motor Vehicles* (Pa. Cmwlth., Nos. 785, 786 C.D. 2022, filed Oct. 22, 2024), slip op. at 13 (citation omitted).[5]

In *Manna*, a panel of this Court summarized the notice PennDOT provided to an inspection station as follows:

> The [o]rder suspending the [station's e]missions [c]ertificate cited only Section 4724 of the Code, which outlines the Department's authority to suspend inspection station certificates if violations are found, and 67 Pa. Code § 177.602(a), which relates to the penalty for specific violations of [PennDOT's] Regulations, rather than any substantive provision of the Code or Regulations. The Audit Report incorporated into this Order likewise contains no reference to a substantive provision that [the inspection station] allegedly violated. The [o]rder suspending the [station's s]afety [c]ertificate similarly cites only Section 4724 and the penalty provision at 67 Pa. Code § 175.51(a), rather than any substantive provision.

*Id.*, slip op. at 13-14 (record citations omitted). The panel in *Manna* affirmed the trial court's determination PennDOT violated the inspection station's due process rights by only citing the penalty provisions in PennDOT's regulations and not citing any substantive regulation or Code provisions which the inspection station may have violated. *Id.* at 14. Specifically, the trial court determined PennDOT's failure to cite substantive provisions required the trial court "to speculate as to what provisions [the inspection station] violated, which the trial court found impermissible." *Id.* at 10. Concluding PennDOT's failure violated the inspection station's due process

---

[5] We may cite unreported memorandum opinions of this Court issued on or after January 15, 2008, for their persuasive value. *See* Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

10

rights, the panel in *Manna* affirmed the trial court's order sustaining the inspection station's appeal and rescinding PennDOT's suspension of the inspection station's certificates.

In other contexts, this Court has also concluded that due process requires a notice of violations to include citations to the statutory or regulatory provisions that were allegedly violated. *See Germantown Cab Co. v. Phila. Parking Auth.*, 27 A.3d 280, 284 (Pa. Cmwlth. 2011) ("Due process is satisfied if a citation specifically states what section of a law or regulation a person is charged with violating and provides enough information about the charges so that the individual can properly defend himself.") (citation omitted); *Commonwealth v. Borriello*, 696 A.2d 1215, 1217 (Pa. Cmwlth. 1997) ("it is well established that the essential elements of a summary offense must be set forth in the citation so that the defendant has fair notice of the nature of the unlawful act for which he is charged").

In *Borriello*, a trial court convicted a landowner of 26 summary violations for failing to comply with the local municipality's building codes. *Id.* at 1216. Of the citations charging the landowner with these violations, only two identified specific defects in the property, and none cited a specific section of the ordinance. *Id.* In reversing the trial court's convictions, this Court noted a "[f]ormal accusation and specific charge enables a defendant to properly defend and protect himself from further prosecution of the same offense, and enables the court to determine the sufficiency of the prosecution's case to support a conviction." *Id.* at 1217 (citation omitted).

Here, PennDOT's Notice was identical in substance to PennDOT's notice in *Manna*. Specifically, just as in *Manna*, the Notice cited "only Section 4724 [of the Code] and the penalty provision at 67 Pa. Code § 175.51(a), rather than any

11

substantive provision." *Manna*, slip op. at 14. The trial court overlooked PennDOT's omission, opining that the Notice included "the exact language of every subset of 67 Pa. Code §175.51(a) that was violated." *See* Trial Ct. Op., 6/17/2024, at 4. This was an error of law. Even though the trial court's assertion is correct, 67 Pa. Code § 175.51(a) is a penalty provision in PennDOT's regulations, not a substantive provision. 67 Pa. Code § 175.51(a) does not list elements of offenses or identify where in the Code or PennDOT's regulations the substantive requirements exist. In addition, the Notice did not otherwise provide Inspection Station with this information. Consequently, like in *Manna*, PennDOT's failure to cite substantive Code or regulation provisions violated Inspection Station's due process rights.

## B.    Dates in Notice

Inspection Station's second issue is whether the trial court erred in determining PennDOT's evidence established violations on the date PennDOT provided in the Notice. Specifically, Inspection Station notes the Notice stated that all violations "relat[ed] to conduct that occurred on May 12, 2022" at Inspection Station. *See* R.R. at 64a. PennDOT concedes the Notice's provision identifying the date of violation as May 12, 2022 was "inartfully worded." PennDOT's Br. at 13. Nevertheless, PennDOT argues this did not violate Inspection Station's due process rights because it identified the date of PennDOT's audit, which was the date Inspection Station's violations were discovered, and Inspection Station was not misled by the date. *See id.* at 12-13. In addition, PennDOT noted Inspection Station was actually missing tools on May 12, 2022. *Id.* at 12.

We disagree with Inspection Station's assertion the date in PennDOT's Notice was improper for PennDOT's allegations of fraudulent recordkeeping, improper recordkeeping, careless recordkeeping, and not having appropriate tools to complete

12

inspections. For those offenses, the Notice properly alleged Inspection Station was missing the appropriate tools and was not properly maintaining its records on May 12, 2022. Thus, the date listed in the Notice was not defective for these offenses.

With respect to PennDOT's allegations Inspection Station furnished, lent, gave, sold, or received a certificate of inspection without actually performing an inspection and failed to give a written receipt or work order to a customer, we agree with Inspection Station's argument that the dates in PennDOT's Notice were improper. PennDOT did not introduce any evidence to show Inspection Station committed either of these offenses on May 12, 2022. Rather, PennDOT's witnesses each stated they did not know if Inspection Station was even performing inspections on May 12, 2022. PennDOT and the trial court both utilized Inspection Station's lack of necessary tools on May 12, 2022, as evidence that Inspection Station gave inspection stickers to customers without performing valid inspections. PennDOT did not, however, provide any evidence to directly support this conclusion. As a result, the trial court's finding that Inspection Station committed the offenses of providing a certificate of inspection without performing an inspection and failing to give a written receipt or work order to a customer was not supported by substantial evidence.

## C.     Fraudulent Recordkeeping

Inspection Station's final issue is whether the trial court erred in determining it engaged in fraudulent recordkeeping. Specifically, Inspection Station takes issue with the trial court's determination that omissions of material facts constitute fraudulent recordkeeping. *See* Inspection Station's Br. at 17-18; Trial Ct. Op., 6/17/2024, at 7. This Court has explained that fraudulent recordkeeping "occurs

13

when an entry in the record, the MV-431, is false, entered intentionally and with the purpose of deceiving." *Firestone Tire & Serv. Ctr., O.I.S. No. 798*, 871 A.2d at 867 (citation omitted). We further explained that a record is deceitful if it was "made to mislead anyone inspecting the record into believing that the record was correct." *Id.* (citation omitted).

PennDOT's evidence showed Inspection Station failed to enter numerous inspections in its MV-431 and failed to enter complete information in many more MV-431 entries. PennDOT's evidence also showed Inspection Station failed to record the information necessary to complete the missing information and entries in its MV-431.

PennDOT's evidence did not, however, show that any of the information Inspection Station recorded in its MV-431 was false. Nor did PennDOT's evidence show the MV-431 was made to mislead anyone into believing it was correct. Instead, Inspection Station's inspector admitted the MV-431 was not kept up to date, and Inspection Station's secretary admitted she did not fill in any information in the MV-431 that she was not specifically given by the inspectors. While Inspection Station's vehicle safety inspector's comments and notes about brake readings being 9/16 was deceitful, that measurement was not recorded in the MV-431. As a result, the entries in the MV-431, while grossly inadequate, were not made with the purpose of misleading anyone into believing they were correct. The trial court erred as a matter of law in equating Inspection Station's omissions with fraud and by concluding Inspection Station engaged in fraudulent recordkeeping.

14

## IV.    Conclusion

For the reasons set forth above, and while we have grave concerns about how Inspection Station was conducting its business, we have no choice but to reverse the trial court's April 22, 2024 order denying Inspection Station's appeal.


_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rockland Collision Center, Inc.,     :
               Appellant    :
                            :
         v.          : No. 608 C.D. 2024
                            :
Commonwealth of Pennsylvania,   :
Department of Transportation,    :
Bureau of Motor Vehicles        :

# **O R D E R**

AND NOW, this 19th day of December 2025, the April 22, 2024 order of the Court of Common Pleas of Philadelphia County is **REVERSED**.

_____
STACY WALLACE, Judge