# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, : 
Borough of Phoenixville : 
                     : 
           v. : No. 1374 C.D. 2015
                     : Argued: June 6, 2016
ATL Associates, : 
              Appellant : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge
                HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT           FILED: August 19, 2016

      ATL Associates (ATL) appeals an order of the Court of Common Pleas of Chester County (trial court), which adjudged ATL guilty of a violation of the housing standards of the Borough of Phoenixville's Municipal Code (Borough Code)[1] and imposed a fine of $2,000 and restitution in the amount of $1,478. ATL contends that the citation was invalid because the Borough did not notify it of the violation or give it an opportunity to correct the problem before it issued the citation. We agree and reverse the order of the trial court.

      ATL owns a residential rental property located at 306 High Street, Phoenixville, Pennsylvania (Property). In May and June 2014, the Borough's Code Enforcement Officer, Michael Baurley, visited the Property and found grass taller than the maximum permissible height and accumulations of trash and garbage. In response, the Borough issued a citation to ATL for violating two

---

[1] The entire Borough Code is available online at http://ecode360.com/PH1486 (last visited July 14, 2016).

property maintenance provisions of the Borough Code, and it was convicted by the Magisterial District Judge. ATL then filed a *de novo* appeal to the trial court, which conducted a hearing on February 5, 2015.

At the hearing, Baurley testified that ATL was the Property's owner and has a mailing address of P.O. Box 1941, West Chester. Notes of Testimony (N.T.), 2/5/2015, at 7; Reproduced Record at 7 (R.R. __). Baurley testified that on February 25, 2014, the Borough condemned the Property for non-payment of invoices for water, sewer, and trash services and posted a notice on the Property stating that it was "Unfit for Human Habitation" under authority of the Borough's Housing Code.[2] *Id.* at 8; R.R. 8. The posted notice stated that it was a "Legal Notice" and that the dwelling had been "found in violation of The Housing Codes of the Borough of Phoenixville" and "IT IS HEREBY ORDERED that all persons cease and desist from human occupancy as this dwelling is classified as: **UNFIT FOR HUMAN HABITATION.**" C.R. Exhibit B-3. Accordingly, occupants, if any, were ordered "to vacate the premises." *Id.*

Baurley testified that on May 13, 2014, he found grass in the rear of the Property that was over a foot in height. On June 2, 2014, he returned and found the grass to be close to three feet high. The Borough contracted with

---

[2] Chapter 11 of the Borough Code is designated as the Phoenixville Housing Code of 1976. Section 11-218 of the Borough Code states, in relevant part, as follows:

> 1. Whenever the Housing Inspector finds that any dwelling constitutes a serious hazard to the health or safety of the occupants or to the public because it is dilapidated, unsanitary, vermin-infested or lacking in the facilities and equipment required by this Part, he shall designate such dwellings as unfit for human habitation. Such designation shall be posted on the dwelling and shall specify the reason….

BOROUGH CODE §11-218(1).

2

Westerman's Lawn & Tree Service, LLC (Westerman's) to go to the Property to dispose of trash and brush, clean the yard, and mow the lawn at a cost of $746. Thereafter, on June 16, 2014, ATL was issued a citation for two violations of the Borough Code. Count 1 of the citation charged ATL with a violation of Section 10-301 of the Borough Code[3] because of the high grass on the Property. Count 2 of the citation charged ATL for allowing trash to accumulate on the Property in violation of Chapter 5 of the Borough Code, which adopted the International Property Maintenance Code (2009 ed.).[4]

Upon discovering high grass again in August 2014, Baurley directed Westerman's to remove weeds from the sidewalks, dispose of a concrete birdbath and base pole, and cut down tree stumps. It did so on September 6, 2014. One week later, Westerman's returned to mow and trim the lawn, and to remove weeds.

---

[3] It states, in relevant part:

> **§10-301. Grass, Weeds and Other Vegetation a Nuisance Under Certain Conditions.**
>
> No person, firm or corporation, owning or occupying any property within the Borough [of] Phoenixville shall permit any grass or weeds or any vegetation whatsoever, not edible or planted for some useful or ornamental purpose, to grow or remain upon such premises so as to exceed a height of six inches or to throw off any unpleasant or noxious odor or to conceal any filthy deposit or to create or produce pollen. Any grass, weeds or other vegetation growing upon any premises in the Borough in violation of any of the provisions of this Section is hereby declared to be a nuisance and detrimental to the health, safety, cleanliness and comfort of the inhabitants of the Borough.

BOROUGH CODE §10-301; R.R. 35. Chapter 10 of the Borough Code governs Health and Safety.

[4] Section 308.1 of the International Property Maintenance Code states:

> **308.1 Accumulation of rubbish or garbage.** All *exterior property* and *premises*, and the interior of every structure, shall be free from any accumulation of *rubbish* or garbage.

R.R. 42.

Westerman's charged the Borough $352 for this work. In October 2014, Baurley directed Westerman's to remove furniture, trash, and debris from the Property. Westerman's charged the Borough $380 for this work. The Borough paid these invoices, but it has not been reimbursed by ATL.

On cross-examination, Baurley admitted that he did not notify ATL of the violations either by first-class mail or certified mail. Also, he did not send a notice of violation to ATL prior to, or after, issuing a citation.

Amrit Lal and Tony Lal appeared on behalf of ATL at the hearing. Tony Lal explained that ATL is a partnership, and he is one of the partners. Lal testified that he received the invoices for the work that had been done at the Property as well as the citation; however, he never received a notice of a violation or was provided an opportunity to bring the Property into compliance with the Borough Code.

The trial court dismissed Count 1 of the citation, relating to grass, because ATL had not been provided with notice – by personal service or mail – directing that it clean up the Property prior to the issuance of a citation. With regard to Count 2, relating to trash, the trial court found ATL guilty, stating:

> With regard to the Housing Standards, which would be Count 2, and that would be the violation for the trash and garbage, under, I guess, its Section 209, let's keep it clean, that, too, contains a notice requirement, but on that case I find the defendant guilty because notice there may be served by posting it in a conspicuous portion of the dwelling and such posting shall be considered good and sufficient notice. So the fact that this property was posted as condemned in at least February serves as good and sufficient notice.
>
> Therefore, upon the finding of guilt on Count 2, you shall pay a fine of $2,000, as well as restitution to the borough for the cleanup costs…is $1,478.

4

Trial Court op., 2/5/2015, at 29-30.

On appeal,[5] ATL raises three issues. First, ATL contends that its conviction should be set aside because the Borough did not provide ATL with notice of a violation either by personal service or by mail. Second, ATL contends that the Borough's failure to provide such notice violated due process. Third, ATL contends that the Borough's posted condemnation notice did not constitute a valid substitute for its obligation to notify ATL of the alleged violation of Chapter 5 of the Borough Code for the accumulated trash.

We begin with a review of the relevant provisions of the Borough Code. Chapter 5 of the Borough Code, entitled "Code Enforcement," governs the conditions and maintenance of all property, buildings and structures. Specifically, Part 2 of Chapter 5, designated as the Property Maintenance Code, adopts the International Property Maintenance Code (2009 ed.), as published by the International Code Council. *Inter alia*, the Property Maintenance Code provides standards for ensuring that structures are safe, sanitary and fit for occupation and use, and for condemning and demolishing buildings and structures unfit for human occupancy and use. Section 308.1 of the Property Maintenance Code provides:

> All *exterior property* and *premises*, and the interior of every structure, shall be free from any accumulation of *rubbish* or garbage.

R.R. 42.

---

[5] "In reviewing a summary conviction matter, where the trial court has taken additional evidence in *de novo* review, our standard of review is limited to considering whether the trial court abused its discretion or committed an error of law." *Commonwealth v. Jannini*, 125 A.3d 503, 508 n. 2 (Pa. Cmwlth. 2015).

5

The Borough has also adopted ordinances to regulate the maintenance of real property. Chapter 11, Part 2, of the Borough Code, designated as the Phoenixville Housing Code of 1976,[6] provides minimum standards for residential properties, both rental and owner-occupied, that, *inter alia*, limit the accumulation of garbage[7] and rubbish[8] on property. Specifically, Section 11-209 of the Borough Code, entitled "Responsibilities of Owners and Occupants," provides:

> A. Every occupant of a dwelling, dwelling unit or rooming unit shall maintain in a clean and sanitary condition that part of the dwelling, dwelling unit and yard which he occupies and controls….
>
> ***
>
> C. Every occupant of a dwelling or dwelling unit shall dispose of all rubbish, ashes, garbage and other organic waste in a clean and sanitary manner by placing it in approved storage or disposal facilities which are safe and sanitary. Every occupant shall provide such facilities for and within his dwelling unit and shall maintain them in a clean and sanitary manner….

BOROUGH CODE §11-209; C.R. Exhibit B-35 at 8. Where it is determined that a property is not in compliance with Section 11-209, the Borough Code requires that

---

[6] BOROUGH CODE §§11-201 – 11-232.

[7] Section 11-202 of the Borough Code defines "garbage" as "[t]he animal and vegetable waste resulting from the handling, preparation, cooking and consumption of food." BOROUGH CODE §11-202; C.R. Exhibit B-35 at 1-2.

[8] Section 11-202 of the Borough Code defines "rubbish" as

> [c]ombustible and noncombustible waste materials except garbage, and shall include the residue from the burning of wood, coal, coke and other combustible material, paper, rags, cartons, boxes, wood, excelsior, rubber, leather, tree branches, yard trimmings, tin cans, metals, mineral matter, glass crockery and dust.

BOROUGH CODE §11-202; C.R. Exhibit B-35 at 3.

notice be given of that non-compliance. Specifically, Section 11-215 of the Borough Code provides, in relevant part:

> **§11-215. Notices and Appeals.**
>
> 1. When the Housing Inspector determines that there exists a violation of any provision of this Part, he shall give written notice of such violation to the violator. Such written notice shall be served by registered or certified mail upon the violator at his last known address. In the event such notice cannot be served by registered or certified mail for any reason, such notice may then be served by posting it in a conspicuous portion of the dwelling and such posting shall be considered good and sufficient notice.
>
> 2. The notice of violation shall specify the violation which exists and a reasonable time within which to correct it. The notice may also describe a course or remedial action which will effect compliance with this Part.

BOROUGH CODE §11-215; C.R. Exhibit B-35 at 13.[9] Further, Section 11-232 of the Borough Code prescribes the penalties for violations of the Housing Code provisions:

> In addition to any other sanction or remedial procedure provided, any person who shall violate any provision of [Chapter 11, Part 2] shall, upon conviction thereof, be sentenced to pay a fine of not more than $1,000 and costs of prosecution, or in default of payment of such fine and costs, to undergo imprisonment for not more than 30 days, provided that each day that a violation is permitted to continue, after notice, shall constitute a separate offense.

BOROUGH CODE §11-232; C.R. Exhibit 35 at 22.

---

[9] The Borough did not introduce a copy of a notice to ATL that alleged a violation of the Borough's trash ordinance.

In its first issue, ATL contends that its conviction for Count 2 of the citation, pertaining to accumulated trash, should be set aside because the Borough did not give it a notice of the violation before issuing the citation. The Borough counters that its posting of the condemnation notice on the Property as unfit for human habitation satisfied the notice requirements.[10]

When a borough chooses to regulate by ordinance, it must comply with its provisions. *See generally Philipsburg v. Way*, 12 Pa.D. 173, 174 (1903) 1903 WL 2346 *2. Failure to do so deprives the borough of legal authority to exercise jurisdiction over the property or the property owner. *Id. See also Moon Township v. Cammel*, 687 A.2d 1181, 1186 (Pa. Cmwlth. 1997) (noting that district justice properly dismissed enforcement citations because property owner was not given opportunity to comply with ordinance before being cited); *Township of Maidencreek v. Stutzman*, 642 A.2d 600, 602 (Pa. Cmwlth. 1994) (holding that failure of township to satisfy notice requirements of the Municipalities Planning Code[11] rendered the trial court's preliminary injunction a nullity).

Here, Section 11-215 of the Borough Code requires the Borough's Code Enforcement Officer, when a violation is observed, to "give written notice of such violation to the violator. Such written notice shall be served by registered or certified mail upon the violator at his last known address." BOROUGH CODE §11-215(1).[12] This was not done. The Borough's Code Enforcement Officer admitted

---

[10] At the hearing, the Borough's counsel argued, "This property has been condemned for a year. That is his notice. No one has been occupying it. And not only – we didn't give notice of the June – he's not entitled to notice, your Honor, anyway." N.T., 2/5/2015, at 27; R.R. 27.

[11] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10101-11202.

[12] At argument before this Court, the Borough argued that the notice requirement set forth in Section 11-215 of the Borough Code is inapplicable; instead, the notice provision contained in Chapter 5, Part 2, of the Borough Code (adopting the 2009 International Property Maintenance **(Footnote continued on the next page . . .)**

that the Borough did not give written notice of the violation to ATL prior to the issuance of the citation. N.T., 2/5/2015, at 21; C.R. 21.

Nonetheless, the Borough argues that it gave ATL notice of the violation related to trash by posting the condemnation notice on the Property. In support, the Borough directs this Court to a case from the United States District Court for the Middle District of Pennsylvania, *Jean v. Gerardi*, 2012 WL 1604872 (M.D. Pa., No. 4:10-CV-1568, filed May 8, 2012), for the proposition that Pennsylvania courts have long held that posting a property is sufficient notice of a violation and also satisfies due process.

In *Jean*, a property's detached garage, walls and roof were caving in. The city mailed a notice of violation and notice of condemnation to the plaintiff property owner at the rental property address; the notices were not returned as undeliverable. The city did not receive a response from the property owner. The city also placed a condemnation notice on the garage door giving notice of the impending demolition of the garage. The city sent a second letter to the property owner, who did not respond. The city demolished the garage. The District Court held that because the notices were not returned as undeliverable, the city was entitled to a presumption that notice was received. Further, the notice on the garage constituted valid alternative notice, and the owner conceded that the city had placed a notice on the door to the garage prior to demolishing the structure.

---

**(continued . . .)**
Code) was applicable, and that it satisfied those requirements. We are unpersuaded. The trial court determined that ATL violated Section 11-209 of the Borough Code, which "contain[ed] a notice requirement." N.T., 2/5/2015, at 29; R.R. 29. At no time during or after the trial court proceeding did the Borough object to the trial court's use of the notice provisions set forth in Section 11-215 of the Borough Code.

*Jean* is distinguishable from the instant matter because the Borough did not mail notice of the violation to ATL or post a notice of violation.

Here, although Section 11-215 of the Borough Code permits the Borough to post notice of the violation in a conspicuous place, this is to be done only if notice of the violation cannot be served on the property owner by registered or certified mail. The Borough did not present any evidence it could not serve notice on ATL by mail. Therefore, in the absence of such evidence, the Borough could not post notice of the violation in a conspicuous place on the Property.

Moreover, the condemnation notice did not constitute notice to ATL of a violation of the trash ordinance. The Property was condemned for non-payment of the Borough's invoice for water, sewer, and trash services and was posted nearly four months before the violation of the trash ordinance was first observed. The condemnation notice did not state that there was garbage on the Property, note a violation of the Borough's trash ordinance, or set forth a timetable for bringing the Property into compliance. Further, at the hearing, the Borough did not present evidence that the Code Enforcement Officer observed garbage on the Property when he posted the condemnation notice. In short, the condemnation notice did not provide valid alternative notice of a violation.

Finally, the Borough contends that ATL was on notice to keep the Property free from garbage and rubbish because it received the invoices from the Borough for its costs to remove trash from the Property on seven occasions. We disagree. The presence of garbage on the Property in August and October may constitute new violations of the Borough Code, but is not notice for a violation that is the basis of the June citation. Likewise, the invoices for the clean-up of the

10

Property in June, September and October are not a substitute for the notice of violation required by the Borough Code.

We are cognizant that the Borough incurred significant costs in cleaning up the Property. It may avail itself of civil remedies to recover these costs. Nevertheless, the judgment against ATL cannot be sustained because the citation was not validly issued.

For these reasons, we reverse the trial court's order.[13]

_____
MARY HANNAH LEAVITT, President Judge

---

[13] Because this Court has determined to reverse the trial court's order, we need not address ATL's remaining arguments.

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, : 
Borough of Phoenixville :
  :
v. : No. 1374 C.D. 2015
  :
ATL Associates, :
                  Appellant :

# **O R D E R**

AND NOW, this 19th day of August, 2016, the order of the Court of Common Pleas of Chester County dated February 13, 2015 in the above-captioned matter is REVERSED.

_____
MARY HANNAH LEAVITT, President Judge