**COMMONWEALTH of Pennsylvania**

v.

**Laurence HALSTEAD, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted Sept. 27, 2013.
Decided Nov. 14, 2013.

Brian M. Vinsko, Wilkes–Barre, for appellant.

James R. Nanovic, Jim Thorpe, for appellee.

BEFORE: LEADBETTER, Judge, BROBSON, Judge, and COLINS, Senior Judge.

OPINION BY Judge BROBSON.

Laurence Halstead (Halstead) appeals from an order of the Court of Common Pleas of Carbon County (trial court). Following a de novo hearing, the trial court determined that Halstead had violated seven provisions of the Property Maintenance Ordinance (PMO) of the Borough of Weaver (Borough).[1] The trial court also imposed fines for each violation from $500 to

---

1. Although, as reflected in the caption of this matter, the Borough acts as the Commonwealth in prosecuting alleged violations of its ordinance, we will refer to the Appellee in this matter as the Borough rather than as the Commonwealth.

$1,000 per day commencing January 13, 2013, the date on which the trial court found Halstead guilty. We affirm in part, reverse in part, vacate in part, and remand.

Halstead owns commercial property in the Borough, which once was a local public school. On February 20, 2012, Harold J. Pudliner, Jr. (Mr. Pudliner), the Borough's Manager and Code Enforcement Officer, issued an enforcement letter to Halstead, advising him of the violations and that he had thirty days to abate the violations. The letter also notified Halstead that he could appeal the enforcement notice. Halstead appealed the notice to the Borough's Property Maintenance Appeal Board, which upheld the violations following a hearing that Halstead did not attend.

It appears that Mr. Pudliner then issued summary offense citations to Halstead on May 9, 2012. On September 20, 2012, a Magisterial District Judge (MDJ) convicted and sentenced Halstead on the seven charged offenses. The MDJ imposed fines between $500 and $1,000 for each of the seven offenses for a total of $6,218, which sum included costs in addition to the fines.

Halstead appealed the MDJ's determinations to the trial court, which conducted a de novo hearing. Halstead again did not appear at the hearing, although his attorney appeared. The trial court determined that Halstead was guilty of the seven offenses and assessed the same fines the MDJ imposed for each violation. Additionally, however, the trial court's sentencing order determined that Halstead should be fined the same amount for each additional day that the offenses remained uncorrected. Thus, the trial court's orders provided for fines of $500 to $1,000 per day beginning on January 15, 2013 "for each day that the violation continues and until such time as the defendant brings the subject property into compliance with the [PMO]. Said costs and fine to be paid on or before March 15, 2013." (Reproduced Record (R.R.) 70–76.)

■■■ In reviewing a summary conviction matter, where the trial court has taken additional evidence in de novo review, our standard of review is limited to considering whether the trial court abused its discretion or committed an error of law. *Commonwealth v. Spontarelli,* 791 A.2d 1254, 1255 (Pa.Cmwlth.2002). In *Spontarelli,* we noted that "[i]n summary offense cases, the Commonwealth is required to establish" guilt beyond a reasonable doubt. *Spontarelli,* 791 A.2d at 1258. This court views "all of the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth." *Id.* "The test of sufficiency of the evidence is whether the trial court, as trier of fact, could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt." *Id.*

Here, however, Halstead does not contest evidentiary issues or the Borough's burden of proof. Rather, Halstead challenges the sufficiency of the notice the Borough provided to him. Specifically, Halstead asserts in his concise statement of errors complained of on appeal that "the citations were not valid when issued and not specific as required by Pa. R.Crim. P. 403, which requires sufficient notice of the offense charged or sufficient [sic] as to the facts supporting the citations." (Certified Record (C.R.), Item No. 14.) For example, one of the citations was for "glazing" "broken windows and unsecured windows." Halstead's attorney asserted during the hearing before the trial court that this notice was insufficient, because the building has more than 100 windows and the notice did not advise him as to which windows violated the ordinance.

Rule 403 of the Pennsylvania Rules of Criminal Procedure provides:

Contents of Citation

(A) Every citation shall contain:

. . .

(6) a citation of the specific section and subsection of the statute or ordinance allegedly violated, together with a summary of the facts sufficient to advise the defendant of the nature of the offense charged.

This Court has held that "it is well established that the essential elements of a summary offense must be set forth in the citation so that the defendant has fair notice of the nature of the unlawful act for which he is charged." *Commonwealth v. Borriello*, 696 A.2d 1215, 1217 (Pa.Cmwlth. 1997), *affirmed*, 555 Pa. 219, 723 A.2d 1021 (1999). Pennsylvania Rule of Criminal Procedure 109 provides, however, that cases shall not "be dismissed because of a defect in the form or content of a . . . citation . . . unless the defendant raises the defect before the conclusion of the trial in a summary case . . . and the defect is prejudicial to the rights of the defendant." This rule is derived in part from former Pennsylvania Rule of Criminal Procedure 90. In *Borriello*, we concluded that "[s]uch prejudice will not be found where the content of the citation, taken as a whole, prevented surprise as to the nature of summary offenses of which [the] defendant was found guilty . . . at trial, . . . or the omission does not involve a basic element of the offense charged." *Borriello*, 696 A.2d at 1217 (altered language added). Halstead asserts generally that the citations were all improperly vague and prevented him from having a reasonable opportunity to address the required repairs.

*Section 304.13.1 of the PMO "Exterior Structure" "Glazing"*

■ The citation the Borough issued to Halstead included the following information: a reference to Section 304.13.1 of the PMO, the word "glazing," and the notation "broken windows & unsecured windows." Section 304.1 of the PMO provides in general that "[t]he exterior of a structure shall be maintained in good repair, structurally sound and sanitary so as not to pose a threat to the public health, safety or welfare." Section 304.13.1 of the PMO provides that "[a]ll glazing materials shall be maintained free from cracks and holes." Halstead challenged this citation based upon the lack of a definition of the term "glazing" in the PMO.

Although the term "glazing" is not defined in the PMO, the PMO provides that where no definition is included in the PMO "such terms shall have ordinarily accepted meanings such as the context implies." Section 201.4 of the PMO. The common dictionary definition of the word "glazing" is "the action, process, or trade of fitting windows with glass."[2] Both the provision itself and the citation were sufficient to apprise Halstead that windows in the building violated Section 304.1 of the PMO because the glazing was broken or because windows were not secured.

Halstead also suggests throughout his brief that the citations in general were deficient because they did not specify the precise location in or around the building where the violations existed. Halstead argues that the notice regarding windows was insufficient because it did not specify which windows violated Section 304.13.1 of the PMO. The photographic evidence in the record is indicative of the condition of many of the windows in the building. Halstead cites no authority for the proposition

2. Merriam Webster's Collegiate Dictionary    495 (10th ed. 1997).

that, when a significant number of individual windows in a building violate a glazing requirement, the citation must describe with specificity where the specific windows are located. The citation provided Halstead with the knowledge that windows in the building lacked glazing. Halstead needed only to examine visually the windows on the property to know which ones lacked glazing. Although Halstead has not raised a question regarding the sufficiency of the evidence, the record contains several photographs depicting the numerous windows that have broken panes. In any event, we reject Halstead's argument that the citation relating to windows was insufficient.

### Section 304.2 of the PMO "Exterior Structure" "Protective treatment"

Section 304.2 of the PMO provides:

All exterior surfaces, including but not limited to, doors and window frames, cornices, porches, trim, balconies, decks and fences shall be maintained in good condition. Exterior wood surfaces, other than decay-resistant woods, shall be protected from elements and decay by painting or other protective covering or treatment. *Peeling, flaking and chipped paint shall be eliminated and surfaces repainted.*

Section 304.2 of the PMO (emphasis added). Halstead does not make specific arguments relating to this citation. The citation referred to Section 304.2 of the PMO and "Protective Treatment," and noted "[p]eeling & chipped paint on exterior surfaces." This section obviously provides that property owners are required to eliminate peeling and flaking paint from exterior surfaces. Presuming that Halstead would argue that this citation was too in-definite with regard to the location of the peeling and chipped paint, we rely on our reasoning above regarding the glazing citation, and, accordingly, we reject this argument.

### Section 304.8 of the PMO "Exterior Structures" "Decorative features"

Section 304.8 of the PMO provides that "[a]ll cornices, belt courses, corbels, terra cotta trim, wall facings and similar decorative features shall be maintained in good repair with proper anchorage and in a safe condition." The citation issued to Halstead referred to Section 304.8 of the PMO, "decorative features, and noted "[p]eeling & chipped paint on exterior surfaces." Halstead addressed this violation in the same section of his brief in which he addressed the violation of Section 304.2 of the PMO (relating to peeling and chipped paint on the exterior of the building, and which we discussed immediately above). Halstead simply argues that the citation did not provide information regarding the exact locations of the decorative features that have chipped and peeling paint. For the reasons expressed above, in our discussion of Section 304.2 of the PMO, we reject Halstead's argument.[3]

### Section 304.15 of the PMO "Exterior Structure" "Doors"

Section 304.15 of the PMO provides that "[a]ll exterior doors, door assemblies and hardware shall be maintained in good condition. Locks at all entrances to dwelling units, rooming units and guestrooms shall tightly secure the door. Locks on means of egress doors shall be in accordance with Section 702.3 [of the PMO]." The citation issued to Halstead referred to Section 304.15 of the PMO and to "Doors," and

---

**3.** Halstead challenges this citation in part on Mr. Pudliner's testimony that he issued the citation because the surfaces had not been painted for a long time. This argument appears to relate to the sufficiency of the evidence, which is not an issue before this Court.

noted that "[e]xterior doors are delaminating & deteriorating." In his brief, Halstead, instead of discussing the inadequacy of the notice contained in the citation, raises only an issue concerning whether the evidence was sufficient to establish a violation, which is not an issue he raised in his statement of errors complained of on appeal. Because the issue of sufficiency of the evidence is not subsumed in his statement of errors complained of on appeal, we reject this argument as not being properly before the Court.

### Section 302.7 of the PMO "Exterior Property Areas" "Accessory structures."

Section 302.7 of the PMO provides that "[a]ll accessory structures, including detached garages, fences and walls, shall be maintained structurally sound and in good repair." The citation issued to Halstead referred to Section 302.7 of the PMO and noted "[a]ccessory [s]tructures" and "[e]xterior stone wall is deteriorating." Halstead does not address this particular violation. Consequently, Halstead has waived any challenge to this particular citation.

### Section 304.7 of the PMO "Exterior Structure" "Roofs and drainage" (damaged gutters and roof areas)

Section 304.7 of the PMO provides:

The roof and flashing shall be sound, tight and not have defects that admit rain. Roof drainage shall be adequate to prevent dampness or deterioration in the walls or interior portion of the structure. Roof drains, gutters and downspouts shall be maintained in good repair and free from obstructions. Roof water shall not be discharged in a manner that creates a public nuisance.

The citation the Borough issued to Halstead under Section 304.7 of the PMO referred to "roofs & drainage," and noted that the basis for the citation was "damages guttering, damaged roof areas." Halstead does not address this citation in his brief, and, consequently, we will not discuss this citation any further.

### Section 304.4 of the PMO "Exterior Structure" "Structural members" (roof joists exposed to exterior elements)

■ Section 304.4 of the PMO provides that "[a]ll structural members shall be maintained free from deterioration, and shall be capable of safely supporting the imposed dead and live loads." The Borough's citation to Halstead identified this provision, noted "structural members," and referred to "roof joists exposed to exterior elements." Halstead first argues that the Borough's witness testified that he had no evidence indicating that the joists were not capable of supporting the dead and live load limits. As noted above, however, such testimony does not establish that the citation was insufficient, but rather pertains to the question of whether the Borough proved that a violation existed, which is not an issue before the Court.

The citation indicated that a violation existed because roof joists were exposed to the elements. Thus, the question is whether the citation provided sufficient notice to Halstead that the condition of the building violates a prohibition against failing to maintain joists in a condition "free from deterioration." We agree with Halstead on this point. The alleged violation, by noting exposure only, rather than suggesting that the joists were not free from deterioration, does not clearly advise that a condition of the joists is free from deterioration. Accordingly, we will reverse the trial court's determination that the Borough's citation was sufficient to advise Halstead of the factual basis for a violation of Section 304.4.

1246

*Fines Imposed*

Halstead also argues that the trial court abused its discretion with regard to the fines the trial court imposed for the violations. Section 106.4 of the PMO provides:

Any person who shall violate a provision of this code shall, upon conviction thereof, be subject to a fine of not less than $100.00 no[r] more than $1,000.00 or imprisonment for a term not to exceed 30 days, or both, at the discretion of the Court. Each day that a violation continues after due notice has been served shall be deemed a separate offense.

In this case, the trial court imposed the same fine that the MDJ imposed, $500 to $1,000.00 for each of the seven offenses (totaling $6,000.00), and, in accordance with the authority to regard each day as a separate violation, imposed that fine for each day of the ongoing violation beginning on January 15, 2013, the date of the sentencing order. Halstead argues that the trial court's imposition of a fine that accrued at the rate of approximately $6,000.00 per day constituted an abuse of the trial court's discretion, because the fines would total $360,213.04—an amount which he argues is excessive and unreasonable. (*See* Certified Record (C.R.), Item No. 10). As indicated by the quoted provision above, the PMO does authorize such fines to be imposed "for each day that a violation continues after due notice [of the violation] has been served." Section 106.4 of the PMO.

■ Halstead relies upon Section 9781 of the Judicial Code, 42 Pa.C.S. § 9781, which provides that appellate courts "shall vacate the sentence and remand the case to the sentencing court with instructions if it finds" that, although the sentencing court did not exceed the applicable sentencing guidelines, "the case involves circumstances where the application of the *guidelines*" is "clearly unreasonable." 42 Pa.C.S. § 9781(c)(2) (emphasis added). Section 9781(d) of the Judicial Code provides that appellate courts reviewing sentences "shall have regard for," among other things, "[t]he nature and circumstances of the offense and the history and characteristics of the defendant." Halstead, however, has not presented argument regarding the question of whether this provision applies when there are no applicable sentencing guidelines for summary offenses. The sentencing guidelines to which Section 9781(c) refers are found in 204 Pa.Code §§ 303.1–.18, and they appear to apply to misdemeanors and felonies, rather than summary offenses arising from ordinance violations.[4] Our review indicates that there are no guidelines for the summary offenses at issue in this case, *i.e.,* violations of property maintenance ordinances. Thus, Halstead has not persuaded this Court that the "clearly unreasonable" standard set forth in Section 9781(c)(2), as discussed by our Supreme Court in *Commonwealth v. Mouzon,* 571 Pa. 419, 812 A.2d 617 (2002), is applicable to this matter. Instead, we believe that the applicable standard is set forth in decisional law arising in sentences imposed for conviction of summary offenses.

■ "[S]entencing is within the sound discretion of the trial judge and absent an abuse of discretion this Court will not disturb a sentence imposed by the trial court." *Borough of Kennett Square v. Lal,* 164 Pa.Cmwlth. 654, 643 A.2d 1172, 1175 (citation omitted) *(Borough of Kennett Square I),* appeal denied, 540 Pa. 586, 655

4. "A summary case is one in which the only offense or offenses charged are summary in nature ... [which] includes all charged offenses as defined in the Crimes Code, 18 Pa.C.S. § 106(c), or violations of ordinances for which imprisonment may be imposed upon conviction or upon failure to pay a fine or penalty." *Borriello,* 696 A.2d at 1217 n. 4.

A.2d 517 (1994). In *Borough of Kennett Square I*, which also involved violations of a property maintenance ordinance, we also summarized the manner in which a trial court should arrive at an appropriate sentence for a summary offense:

> In formulating a sentence, the trial court should weigh all mitigating and aggravating factors and arrive at an appropriate sentence that is consistent with the protection of the public and the gravity of the offense. Considerations should include the history and character of the defendant, the nature and circumstances of the crime … and the defendant's attitude, including a lack of contrition for his criminal conduct. Finally, if a sentence is imposed within the statutory limits, there is no abuse of discretion unless the sentence is manifestly excessive so as to inflict too severe a punishment.

*Boro. of Kennett Square I*, 643 A.2d at 1175 (citations omitted).

In a related appeal, *Borough of Kennett Square v. Lal*, 665 A.2d 15 (Pa.Cmwlth. 1995) (*Borough of Kennett Square II* ), this Court again addressed Lal's claims that the fines that the trial court had imposed were excessive. We quoted the passage above and opined that "[a]bsolutely no abuse of discretion has been demonstrated by Lal in this context, nor has he otherwise shown any basis for his claims of the Excessive Fines Clause of the Eighth Amendment." [5] *Id.* at 19.

Halstead did not appear before the trial court to testify on his own behalf. The only testimony regarding the circumstances of the property and Halstead's past behavior was provided by Mr. Pudliner. The trial court reasoned as follows regarding the various factors relevant to sentencing Halstead:

> In the instant case, the testimony of Code Enforcement Officer Pudliner demonstrates that [Halstead] has a pattern of noncompliance with the Borough's [PMO]. Mr. Pudliner testified that there were violations of a similar nature at the same property in 2011. [Halstead] was found guilty of those violations and did not appeal the Magisterial District Court's sentence.

(Tr. Ct. Op in. at 7–9.) Thus, the trial court also reasoned that Halstead's history of similar violations, in addition to the nature of the offenses, warranted the fines it imposed on Halstead.

Although Halstead acknowledges that the fines the trial court imposed are permitted by the PMO, Halstead was unaware of what the fine would be at the time the trial court imposed sentence. While the factors the trial court noted are relevant and not insignificant, we note that other factors, including, but not limited to, the value of the property and the feasibility and cost of repairs, may be relevant to whether the fine is excessive. Because the trial court limited its analysis and did not consider a broader range of factors, this Court cannot make a meaningful evaluation of the question of whether the trial court imposed a penalty that was too severe. Thus, we vacate the imposition of the fines for the sole purpose of remanding the matter to the trial court to re-evaluate this issue and take additional evidence, if warranted.

Accordingly, based upon the discussion above, we affirm the trial court's determinations regarding all of the alleged viola-

5. Although Halstead did not raise the question of whether the trial court's sentence violates the Eighth Amendment's Excessive Fines Clause, he did assert that the trial court abused its discretion by imposing an excessive sentence. Whether raised in the constitutional sense or merely by reference to the alleged excessive nature of the penalty, the issue of whether the penalty was too severe, such that it was excessive, is properly before the Court.

tions of the cited PMO provisions, except for the alleged violation of Section 304.4 of the PMO, which we reverse. We vacate the imposition of the fines, however, for the purpose of remanding the matter to the trial court to address the question of whether the fines it imposed were too severe.

### ORDER

AND NOW, this 14th day of November, 2013, the order of the Court of Common Pleas of Carbon County (trial court) is REVERSED in part, AFFIRMED in part, and VACATED in part. The order is REVERSED as to its determination that Laurence Halstead violated Section 304.4 of the Property Maintenance Ordinance of the Borough of Weaver (PMO) for exposed roof joists and AFFIRMED as to the determination of violations of the remaining sections of the PMO. The trial court's Order is VACATED to the extent it imposes fines, and this matter is REMANDED to the trial court to reconsider the question of whether the fines are excessive, to accept additional evidence, as warranted, and to issue a new adjudication.

Jurisdiction relinquished.