IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania     : **CASES CONSOLIDATED**
                                               :
            v.                        :
                                               :
Prasad Margabandhu,            :
                  Appellant     : No. 1413 C.D. 2023

Commonwealth of Pennsylvania     :
                                               :
           v.                        :
                                               :
Pgh Burgers & Fries, Inc.,        : No. 1414 C.D. 2023
                  Appellant     : Argued: October 8, 2024

BEFORE:     HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE STACY WALLACE, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE                          FILED: December 24, 2024

Prasad Margabandhu (Margabandhu) and Pgh Burgers & Fries, Inc. (Burgers & Fries) (collectively, Owners) appeal the September 12, 2023 orders (Orders) of the Court of Common Pleas of Allegheny County (trial court). In the Orders, the trial court found Owners violated several of the City of Pittsburgh's (City) ordinances and sentenced Owners to fines of $20,000 to Margabandhu and $10,000

to Burgers & Fries.[1]  Owners challenge the sufficiency of the evidence supporting their convictions and allege the trial court imposed excessive fines.  After review, we affirm in part, reverse in part, vacate in part, and remand for a proceeding consistent with this opinion.

## BACKGROUND

Owners own property located at 2428 Arlington Avenue in Pittsburgh, Pennsylvania (Property).  A church (the Church) and a former rectory building (the Building) are located on the Property.[2]  On November 22, 2022, a City inspector[3] filed private criminal complaints (Complaints) accusing Owners of violating: (1) Section 916.04 of the City's Code of Ordinances (Code)[4] alleging Owners had a dumpster too close to the Property and (2) Section 304.8 of the International Property Maintenance Code (IPMC)[5] alleging the façade of Owners' Property was in disrepair.  Original Record at No. 1414 C.D. 2023 (O.R. 14), at 22; Original Record

---

[1] By order dated March 13, 2024, this Court consolidated Owners' appeals.

[2] At the trial, Margabandhu testified he purchased the Property in 2015 or 2016.  *See* Reproduced Record (R.R.) at 28a.  Additionally, he testified Burgers & Fries, which he and another individual own, also owns the Property.  *Id.* at 34a.

[3] The City's Department of Law prosecuted these violations on behalf of the Commonwealth.  The Commonwealth is the appellee in this case.

[4] City of Pittsburgh, Pennsylvania, Code of Ordinances (2016).  The Code can be found online at https://ecode360.com/PI6865 (last visited Dec. 23, 2024).

[5] In 2020, the City adopted the 2015 edition of the IPMC as part of the City's Code of Ordinances.  *See* Pittsburgh, Pa., Code of Ordinances, § 1004.01.  Therefore, any reference to the IPMC throughout this opinion is to the 2015 edition.

2

at No. 1413 C.D. 2023 (O.R. 13), at 18.[6] On December 15, 2022, the same inspector filed an additional private criminal complaint (Complaint) accusing Margabandhu of violating: (1) Section 304.7 of the IPMC alleging the Building's roof, downspout, and gutters were in disrepair; (2) Section 304.13 of the IPMC alleging the Building's windows were in disrepair; (3) Section 302.7 of the IPMC alleging the fence on Owners' Property was in disrepair; (4) Section 302.3 of the IPMC alleging the sidewalk on Owners' Property was in disrepair; and (5) Section 304.5 of the IPMC alleging walls on the Property were in a state of disrepair and required replacement.[7] O.R. 13, at 18; O.R. 14, at 22. On March 3, 2023, a magisterial district judge found Owners guilty of the violations and imposed an aggregate fine of $100,000.00. O.R. 13, at 16; O.R. 14, at 24.

Owners filed summary appeals of their convictions in the trial court. On September 12, 2023, the trial court held a trial *de novo*.[8] R.R. at 11a. At the trial, Georgeann Parish, a neighbor to Owners' Property, testified the driveway to the Property is full of "stuff" and the night before the trial, Owners had someone clean up the garbage on the Property. *Id.* at 18a. She further testified that while Owners

[6] The trial court filed an original record at each case number: one for *Commonwealth v. Pgh Burgers & Fries, Inc.* at this Court's docket number 1414 C.D. 2023 and trial court docket number CP-02-SA-0000654-2023, and one in *Commonwealth v. Prasad Margabandhu* at this Court's docket number 1413 C.D. 2023, and the trial court's docket number CP-02-SA-0000401-2023. We refer to the original records as outlined above (O.R. 13 and O.R. 14). Additionally, because the pages of the Original Records are not numbered, page numbers cited herein reflect electronic pagination.

[7] The inspector filed a total of three Complaints: (1) a complaint dated November 22, 2022, against Burgers & Fries alleging two violations; (2) a complaint dated November 22, 2022, against Margabandhu alleging two violations; and (3) a complaint dated December 9, 2022, against Margabandhu alleging five violations. O.R. 14, at 22; O.R., 13 at 26.

[8] On July 11, 2023, the trial court ordered a 60-day postponement of the trial to afford Owners an opportunity to address the alleged violations. O.R. 13, at 10.

had cut the grass on the Property, the bushes and weeds in the front of the Property remained "sky high." *Id.* Next, Deborah Morgan (Morgan), a representative of the Arlington Civic Council (Council), testified the Council had been "dealing with this situation for at least twelve years" and that they have "complained and complained and complained and nothing has happened until now." *Id.* at 20a. Morgan testified the City removed 12 dump trucks of garbage that had been piled in front of the Church. *Id.* Additionally, she explained all but one of the Building's windows were missing, but none were boarded. *Id.*

Next, community resource officer Christine Luffey (Officer Luffey) testified. *Id.* at 22a. Officer Luffey explained she attends Council meetings every month and the situation with the Property has been "almost to the point of overwhelming for these residents." *Id.* She noted at each meeting, Council discusses the state of the Property. *Id.* Additionally, Jessica Benham, a neighbor, testified Owners had a significant amount of time to make necessary repairs to the Property, and they have failed to do so. *Id.* at 23a. Finally, Bob Charland, chief of staff to a Council member, testified the neighborhood is concerned about the Property and Owners have shown no efforts to fix the Property. *Id.* at 24a.

Margabandhu testified on behalf of Owners. Margabandhu explained a previous tenant of the Property caused a lot of the damage. *Id.* at 28a. He admitted to removing all the windows, but noted he ordered and intended to install replacement windows. *Id.* On cross-examination, Margabandhu acknowledged the windows needed to be secured and installed, the fascia, which was in "very bad shape," needed to be repaired, and there was a missing downspout which needed to be connected so that water is not flowing. *Id.* at 31a.

4

In addition to Margabandhu's testimony, Owners' attorney (Counsel) represented the following to the trial court:

> Margabandhu has obtained a building permit to restore the interior of the building, plaster and dry wall . . . the damage to this building was done by a prior tenant who has been criminally prosecuted and is in jail . . . . [T]he repairs that are required are relatively minor. It's sidewalk, the sidewalk repair, a retaining wall repair, really the windows have been broken . . . windows have been ordered and there is damage to a fence that can be repaired this afternoon is my understanding. Part of the fence fell down . . . . And the other issue would be the fascia and downspouts. Those are relatively minor. The fascia is still functioning. It needs some paint and some weather protection but other than that it's still functioning.

*Id.* at 14a-15a. Additionally, Counsel represented Owners cut the grass, removed the garbage, and removed a dumpster. *Id.* at 15a. Notably, the City's inspector, who filed the Complaints, did not testify at the trial.

The trial court found Owners guilty of all charged violations. The trial court explained: "I think something has to be done today because good will hasn't been shown in the past and so I think there has to be a monetary incentive in this regard." *Id.* at 34a. The trial court imposed an aggregate fine of $20,000 against Margabandhu and an aggregate fine of $10,000 against Burgers & Fries. *Id.* at 36a-37a. Owners appealed to the Pennsylvania Superior Court. By order filed November 30, 2023, the Pennsylvania Superior Court transferred the case to this Court.

On appeal, Owners assert (1) the Commonwealth presented insufficient evidence to support the convictions and (2) the fines imposed by the trial court are excessive. Owners' Br. at 5. In response, the Commonwealth argues the trial court properly found Owners guilty of violating the Code because Owners failed to rehabilitate and make required improvements to the Property. Commonwealth's Br.

5

at 1. Additionally, the Commonwealth contends the trial court did not impose excessive fines given the trial court provided Owners ample time to make required improvements and rehabilitate the Property, which they failed to do. *Id.*

In its Pennsylvania Rule of Appellate Procedure 1925(a) Opinion, Pa.R.A.P. 1925(a) (1925(a) Opinion), the trial court explains:

> [Margabandhu] admitted to owning the [Property] since 2015 or 2016. He was given an opportunity to abate the violations in July of 2023 and during the hearing he admitted it would only take him 30 days to cure the violations. However, the conditions of violation were not abated during the 60 days he was given in July to improve the [Property]. Moreover, neighbors and community leaders testified to the blight that the [Property] has been on the neighborhood for numerous years.

1925(a) Op. at 3. Furthermore, regarding the fines, the trial court indicates: "The purpose of a fine is not only punishment, but also serves as a deterrent to discourage future or continued violations. The fine imposed was not excessive, since [Margabandhu] has owned the [Property] many years and has done very little to improve or maintain the [Property]." *Id.* at 4. Regarding the sufficiency of the evidence, the trial court states, "the photographs and testimony were sufficient to establish [] all of the convictions." *Id.*

## DISCUSSION

### *Sufficiency of the Evidence*

We begin by addressing Owners' challenge to the sufficiency of the evidence supporting their convictions. Owners argue the evidence elicited at the trial did not address the violations charged, but rather the hearing seemed "more a compilation of prior grievances" by the community members. Owners' Br. at 10. In response, the Commonwealth contends "[a]ll of the[] violations were supported by the

6

testimony of community members[,] Councilman Charland[,] and through cross[-]examination of [Margabandhu]." *Id.* at 6.

When a defendant appeals following a conviction in any summary proceeding, a trial court hears the case *de novo* without a jury. Pa.R.Crim.P. 462. We review a trial court's determination on appeal from a summary conviction to determine "whether there has been an error of law or whether competent evidence supports the trial court's findings." *Commonwealth v. Nicely*, 988 A.2d 799, 803 n.3 (Pa. Cmwlth. 2010) (citation omitted). When reviewing the sufficiency of the evidence in a conviction for a summary offense, we consider whether, viewing all the evidence admitted at the trial, together with all reasonable inferences therefrom, the trial court could have found evidence and inferences sufficient to prove every element of each offense charged beyond a reasonable doubt. *Commonwealth v. Austin*, 846 A.2d 798, 800 n.2 (Pa. Cmwlth. 2004). Moreover,

> [w]e assess the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict[ ]winner. We must determine whether there is sufficient evidence to enable the fact-finder to have found every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact[-]finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.

*Commonwealth v. Bowens*, 265 A.3d 730, 740-41 (Pa. Super. 2021), *appeal denied*, 279 A.3d 508 (Pa. 2022) (citation omitted).[9]

Here, following the *de novo* trial, the trial court found Owners guilty of seven summary violations of the City's Code and the IPMC. We address each conviction in turn. First, the trial court found Owners guilty of violating Section 916.04 of the Code. Section 916.04 of the Code provides:

> The following additional site design standards shall apply to development that is subject to the Residential Compatibility Standards of this Chapter.
>
> . . . .
>
> B. Dumpsters and refuse receptables shall be located a minimum of thirty (30) feet from any property [in the relevant zones].

Code, § 916.04. As to this violation, the Complaints allege Owners had a dumpster too close to the Property. O.R. 13, at 18; O.R. 14, at 22. However, during the trial, the Commonwealth failed to elicit any testimony to prove this violation.[10] Therefore, based on our review of the record, the Commonwealth failed to prove Owners had a dumpster on the Property in violation of Section 916.04 of the Code. Accordingly, there is insufficient evidence in the record to support the trial court finding Owners guilty of this violation.

---

[9] While Pennsylvania Superior Court decisions are not binding on this Court, we may cite to them for their persuasive value where they address similar issues. *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

[10] While there are references throughout the transcript to photographs, and the trial court indicates in its 1925(a) Opinion that both testimony *and photographs* were presented by the Commonwealth, the Commonwealth did not admit any photographs into the record. Because we are "limited to considering only those facts that have been duly certified in the record on appeal," *Commonwealth v. Powell*, 956 A.2d 406, 423 (Pa. 2008) (citation omitted), this Court cannot consider photographs that were not made part of this record.

Next, the trial court found Owners guilty of violating Section 304.8 of the IPMC. Section 304.8 of the IPMC provides: "Cornices, belt courses, corbels, terra cotta trim, wall facings and similar decorative features shall be maintained in good repair with proper anchorage and in a safe condition." IPMC, § 304.8. The Complaints alleged the façade was in disrepair in violation of Section 304.8 of the Code. O.R. 13, at 18; O.R. 14, at 22. The Commonwealth failed to present any testimony about cornices, belt courses, corbels, terra cotta trim, wall facings, or other decorative features. Accordingly, there is insufficient evidence in the record to support the trial court finding Owners guilty of violating IPMC Section 304.8.

Third, the trial court found Margabandhu guilty of violating Section 304.7 of the IPMC. Section 304.7 of the IPMC provides:

> The roof and flashing shall be sound, tight and not have defects that admit rain. Roof drainage shall be adequate to prevent dampness or deterioration in the walls or interior portion of the structure. Roof drains, gutters and downspouts shall be maintained in good repair and free from obstructions. Roof water shall not be discharged in a manner that creates a public nuisance.

IPMC, § 304.7. The Complaint alleged the Building's roof, downspout, and gutters were in disrepair. O.R. 13, at 26. The Commonwealth failed to elicit testimony from its witnesses regarding the roof, downspout, or gutters on the Building. Accordingly, there is insufficient evidence in the record to support the trial court's finding that Owners were guilty of violating Section 304.7 of the IPMC.

Next, the trial court found Margabandhu guilty of violating Section 304.13 of the IPMC. Section 304.13 of the IPMC provides: "Every window, skylight, door and frame shall be kept in sound condition, good repair and weather tight." IPMC, § 304.13. The Complaint alleged the Building's windows were in disrepair. O.R. 13, at 26. At trial, Morgan testified the Building contained only one window, and

the remaining were windowless frames. Furthermore, Margabandhu explained his previous tenant broke some of the windows and he then "took all the windows out." R.R. at 29a. He admitted "[t]he windows aren't there because we removed them, waiting for replacement windows." *Id.*[11] Accordingly, the trial court had sufficient evidence to find the Building's windows were in disrepair, and we discern no error in the trial court finding Owners guilty of violating Section 304.13 of the IPMC.

Fifth, the trial court found Margabandhu guilty of violating Section 302.7 of the IPMC. Section 302.7 of the IPMC provides: "Accessory structures, including detached garages, fences and walls, shall be maintained structurally sound and in good repair." IPMC, § 302.7. The Complaint alleged the Property's fence was in disrepair. O.R. 13, at 26. The Commonwealth failed to elicit any testimony about a fence on the Property. Accordingly, there is insufficient evidence in the record to support the trial court finding Owners guilty of violating IPMC Section 302.7.

Next, the trial court found Margabandhu guilty of violating Section 302.3 of the IPMC. Section 302.3 of the IPMC provides: "Sidewalks, walkways, stairs, driveways, parking spaces and similar areas shall be kept in a proper state of repair, and maintained free from hazardous conditions." IPMC, § 302.3. As to this violation, the Complaint alleged there was a broken sidewalk in front of the Property. O.R. 13, at 26. The Commonwealth did not present any testimony or evidence about sidewalks on the Property. Accordingly, there is insufficient evidence in the record to support the trial court finding Owners guilty of violating IPMC Section 302.3.

Finally, the trial court found Margabandhu guilty of violating Section 304.5 of the IPMC. Section 304.5 of the IPMC provides: "Foundation walls shall be free from holes, breaks, and loose or rotting materials; and maintained weatherproof and

---

[11] Additionally, Counsel conceded the "windows have been broken," and noted Owners ordered new windows. R.R. at 14a.

properly surface coated where required to prevent deterioration." IPMC, § 304.5. The Commonwealth alleged in the Complaint the Building's wall was in disrepair. O.R. 13, at 26. While the Commonwealth's attorney and the trial court both referenced a "foundation crack" during the hearing, none of the witnesses mentioned disrepair to a foundation wall, and "it is well[ ]settled that statements made by counsel are not evidence." *Commonwealth v. Puskar*, 951 A.2d 267 (Pa. 2008). Thus, the Commonwealth failed to present any evidence regarding the state of any foundation walls. Accordingly, there is insufficient evidence in the record to support the trial court finding Owners guilty of violating Section 304.5 of the IPMC.

After considering the totality of the evidence presented, even in the light most favorable to the Commonwealth, the Commonwealth failed to meet its burden of proving Burgers & Fries violated Section 916.04 of the Code[12] or Section 304.8 of the IPMC or proving Margabandhu violated Section 916.04 of the Code or Sections 304.8, 304.7, 302.3, 302.7, and 304.5 of the IPMC. We conclude there is no proof of these violations in the record, certainly not proof beyond a reasonable doubt, which the Commonwealth must provide to support these convictions. Accordingly, we reverse the trial court's guilty determinations as to these violations and affirm the trial court's guilty determinations as to Margabandhu's violation of Section 304.13 of the IPMC.

*Excessive Fines*

Next, we address Owners' claims that the fines imposed by the trial court are excessive and violate the Eighth Amendment to the United States Constitution, U.S.

---

[12] The trial court's Orders as to both Burgers & Fries and Margabandhu reference Section 916.0**3** of the Code, but the trial court asserts this was a clerical error, and the Orders should have referenced Section 916.0**4**, which is consistent with the allegations in the Complaints. *See* 1925(a) Op. at 6.

Const. amend. VIII, and article I, section 13 of the Pennsylvania Constitution, Pa. Const. art. I, § 13. Owners' Br. at 9. Owners further argue the trial court erred by failing to inquire into Owners' ability to pay before imposing the fine. *Id.* In response, the Commonwealth contends because the primary purpose of a fine is both to punish and deter further violations, the amount of the fine can be raised "to whatever sum is necessary to discourage future or continued violations." Commonwealth's Br. at 4.

Whether a fine is excessive under the Pennsylvania Constitution is a question of law, thus our standard of review is *de novo* and our scope of review is plenary. *See Commonwealth v. Eisenberg*, 98 A.3d 1268, 1279 (Pa. 2014). Under the Eighth Amendment of the United States Constitution, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Likewise, the Pennsylvania Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted." Pa. Const. art. I, § 13. While the Eighth Amendment does not require "strict proportionality between crime and sentence," it does forbid "extreme sentences which are grossly disproportionate" to the offense. *Commonwealth v. Hall*, 701 A.2d 190, 209 (Pa. 1997). Similarly, the Pennsylvania Supreme Court has indicated the Pennsylvania Constitution's prohibition against excessive fines requires a fine to be "reasonably proportionate" to the committed offense. *Eisenberg*, 98 A.3d at 1287.

Here, the IPMC provides that any person who violates any provision of the IPMC "shall be subject to the provisions of [Section 1001.10 of the Code]." IPMC, § 106.4. Section 1001.10 of the Code provides:

> Any persons . . . violating any provisions of this Title . . . shall, upon conviction thereof before any City Housing or Police Magistrate be

12

fined not more than one thousand dollars ($1,000.00) and costs for each and every violation or noncompliance, and in default of a payment of such fine and costs shall be imprisoned for not more than ninety (90) days for each offense. Each day's violation shall constitute a separate offense. The imposition of a penalty shall not excuse the violation or permit it to continue, nor shall the imposition of a penalty be held to bar any other remedies provided by this Title.

Code, § 1001.10. The Code further provides:

Every calendar day after the Person has received written notice of any violation of this Chapter, and on which the violation continues, will constitute a separate violation of this chapter. The Person will be subject to pay the fine specified in the Pittsburgh Code of Ordinances for each day the residential property remains in violation.

Code, § 1005.04.

The trial court properly notes the "primary purpose of a fine or a penalty is twofold: to punish violators and to deter future or continued violations." *Mastrangelo v. Buckley*, 250 A.2d 447, 464 (Pa. 1969). However, while we acknowledge the cumulative nature of a fine is in keeping with the terms of the ordinances, "when an ordinance is written so as to have a punitive . . . effect, without relation to the individual's ability to pay and the severity of the violation, it does not meet the standard required by the constitution." *Commonwealth v. Heggenstaller*, 699 A.2d 767, 769 (Pa. Super. 1997). When the trial court formulates a sentence for a summary offense, the trial court

should weigh all mitigating and aggravating factors and arrive at an appropriate sentence that is consistent with the protection of the public and the gravity of the offense. Considerations should include the history and character of the defendant, the nature and circumstances of the crime . . . and the defendant's attitude, including a lack of contrition for his criminal conduct.

13

*Commonwealth v. Halstead*, 79 A.3d 1240, 1246-47 (Pa. Cmwlth. 2013). Additionally, the trial court may consider factors such as the value of the property and the feasibility and cost of repairs in determining a fine that is not excessive. *Id.* at 1247.

Furthermore, the Sentencing Code mandates that trial courts "shall not sentence a defendant to pay a fine unless it appears of record that the defendant is or will be able to pay." 42 Pa.C.S. § 9726(c). In *Commonwealth v. Ford*, 217 A.3d 824, 829 (Pa. 2019), the Pennsylvania Supreme Court held "trial courts are without authority to impose non-mandatory fines absent record evidence that the defendant is or will be able to pay them." The Court explained the burden is not on a defendant to inform the court he may have trouble paying a fine, but rather is on the sentencing court to have record evidence of the defendant's ability to pay before imposing a fine. *Ford*, 217 A.3d at 829.

In this case, the record reveals the trial court continued the case for approximately 60 days to afford Owners an opportunity to address the alleged violations. Given that this trial proceeded after the 60-day continuance, Owners apparently failed to address the violations. Under the Code's penalties provision, Owners could have faced a fine of up to $1,000 per day for each violation. In light of these provisions, we cannot say the fines imposed by the trial court of $20,000 and $10,000 were disproportionate to the violations. Nevertheless, other than noting Margabandhu was before the trial court 60 days before and had failed to make repairs to the Property, the trial court did not address the proportionality of the fines to the violations or Owners' ability to pay the imposed fines on the record. Accordingly, we vacate the trial court's imposition of fines.

14

## CONCLUSION

Based on the discussion above, we reverse the trial court's Orders as to its determination of guilt against Burgers & Fries for violations of Section 916.04 of the Code and Section 304.8 of the IPMC and its determination of guilt against Margabandhu for violations of Section 916.04 of the Code and Sections 304.8, 304.7, 302.3, 302.7 and 304.5 of the IPMC. We affirm the trial court's guilty determination as to Margabandhu's violation of Section 304.13 of the IPMC. Additionally, we vacate the trial court's imposed fines and we remand this matter to the trial court for imposition of a fine proportional to Margabandhu's violation. Moreover, we direct the trial court, on remand, to make a determination based upon record evidence regarding Margabandhu's financial resources and his ability to pay the imposed fine. *See* 42 Pa.C.S. § 9726.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | **CASES CONSOLIDATED** |
| | : | |
| v. | : | |
| | : | |
| Prasad Margabandhu, | : | |
| Appellant | : | No.  1413 C.D. 2023 |
| | | |
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | |
| | : | |
| Pgh Burgers & Fries, Inc., | : | No.  1414 C.D. 2023 |
| Appellant | : | |

**O R D E R**

**AND NOW**, this 24th day of December 2024, it is hereby **ORDERED** as follows:

The Court of Common Pleas of Allegheny County's (trial court) September 12, 2023 order in *Commonwealth v. Pgh Burgers & Fries, Inc.* is **REVERSED**.

The trial court's September 12, 2023 order (Order) in *Commonwealth v. Prasad Margabandhu* is **REVERSED IN PART** as to the trial court's determinations of guilt for the alleged violations of Section 916.04 of the Pittsburgh Code of Ordinances, Pittsburgh, Pa., Code of Ordinances, § 916.04 (2016), and Sections 304.8, 304.7, 302.3, 302.7, and 304.5 of the International Property Maintenance Code as adopted by the Pittsburgh, Pa., Code of Ordinances, § 1004.01.

The trial court's Order is **AFFIRMED IN PART** as to the violation of Section 304.13 of the International Property Maintenance Code as adopted by the Pittsburgh, Pa., Code of Ordinances, § 1004.01. The Order is **VACATED IN PART** as to the trial court's imposition of fines, and the matter is **REMANDED** to the trial court to impose a fine that is in line with the violation that remains against Prasad Margabandhu. The trial court is **DIRECTED** to make a determination based upon record evidence regarding Prasad Margabandhu's financial resources and his ability to pay the imposed fine.

     Jurisdiction Relinquished.

 

_____
STACY WALLACE, Judge