IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania　　　：
　　　　　　　　　　　　　　　　　：
　　　　　　　v.　　　　　　　　：　No. 708 C.D. 2022
　　　　　　　　　　　　　　　　：　Submitted:　August 8, 2025
David L. Fields,　　　　　　　　：
　　　　　　　　　　　　　　　　：
　　　　　　　Appellant　　　　：

BEFORE:　　HONORABLE MICHAEL H. WOJCIK, Judge
　　　　　　　HONORABLE MATTHEW S. WOLF, Judge
　　　　　　　HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK　　　　　　　　　　　FILED:　September 19, 2025

　　　　　David L. Fields (Appellant) appeals from the June 7, 2022 Order of the Allegheny County Court of Common Pleas (trial court), which found Appellant guilty of violating the City of Pittsburgh's (City) Code of Ordinances[1] (Code) and assessed $10,136.25 in fines and costs against him.　Before this Court, Appellant chiefly argues that the fines imposed by the trial court were excessive under the Code.　We affirm.

　　　　　Appellant owns real property in the City's 20th Ward at 308 Minton Street, Pittsburgh, Pennsylvania (the Property).　On or about July 20, 2017, Russell Blaich, the City's Inspector, filed a private criminal complaint in the Magisterial District Court alleging that Appellant violated Section 108.1.1 of the IPMC.[2]　*See*

---

[1] Relevant here, the City adopted the 2003 International Property Maintenance Code (IPMC) as part of the City's Code.　Pittsburgh's Code §1004.
[2] Section 108.1.1 of the IPMC defines an unsafe structure as:

**(Footnote continued on next page…)**

Reproduced Record (R.R) at 13a-15a. The complaint alleged that the Property contained an unsafe structure which had been condemned on October 6, 2006, and which was otherwise "dangerous to the life, health, property or safety of the public . . . ." *Id*. The Magisterial District Court held a trial on the matter on November 6, 2019, notwithstanding Appellant's absence,[3] and found Appellant guilty of violating the IPMC on two counts. Consequently, the Magisterial District Court imposed fines and costs in the amount of $10,139.50. *Id*. at 16a.

Appellant subsequently filed a Notice of Appeal in the trial court. At a *de novo* summary appeal hearing held on December 7, 2021, Appellant once again failed to appear, and the trial court dismissed his appeal.[4] R.R. at 25a. However, the trial court granted Appellant's Motion for Reconsideration on January 4, 2022, and rescheduled a new summary appeal hearing for June 7, 2022. *Id*. at 24a.

Yet again, when the trial court called the case forward at the June 7, 2022 hearing, Appellant was absent. *See* Trial Court's Rule 1925(a) Opinion (Trial Court's Op.) at 1. Nevertheless, the trial court proceeded with the hearing, and the

---

> An unsafe structure is one that is found to be dangerous to the life, health, property or safety of the public or the occupants of the structure by not providing minimum safeguards to protect or warn occupants in the event of fire, or because such structure contains unsafe equipment or is so damaged, decayed, dilapidated, structurally unsafe or of such faulty construction or unstable foundation, that partial or complete collapse is possible.

1 IPMC §108.1.1. The 2003 edition of the IPMC can be found at: https://codes.iccsafe.org/content/IPMC2003P3 (last visited September 18, 2025).

[3] *See* Pa.R.Crim.P. 455(a) ("If the defendant fails to appear for trial in a summary case, the trial shall be conducted in the defendant's absence . . . .").

[4] *See* Pa.R.Crim.P. 462(d) ("If the defendant fails to appear, the trial judge may dismiss the appeal and enter judgment in the court of common pleas on the judgment of the issuing authority.").

City offered three photographs of the Property into evidence. *Id*. The City's Inspector described the first two photographs as depicting a two-story frame with the roof shingles "blown off. That means there's holes in the roof and wood rot through the roofing." Trial Court's Hearing I, 6/7/22, Notes of Testimony (N.T.) at 4.[5] The City's Inspector testified that the third photograph depicted missing siding, leaking box gutters and a rotting porch. *Id*. Because of Appellant's absence, the trial court dismissed the appeal once more, and the City's Inspector left the courtroom. *Id*.

However, later that same morning, Appellant appeared before the trial court. Based on the testimony elicited before the trial court, the trial court seems to have reopened the hearing. Appellant related that, in its current condition, the Property was only worth at most $1,500.00, such that the roughly $10,000.00 fine made investment opportunities or a sale of the Property prohibitive. Trial Court's Hearing II, 6/7/22, N.T. at 3-4. Appellant went so far as to suggest that even the Magistrate who had imposed the costs and fines against him had privately related to him that such a cumbersome fine was "unheard of." *Id*., N.T. at 4, 10. Consequently, Appellant expressed his desire to satisfy the fine by transferring ownership of the Property to the City.[6] *Id*.

Initially, the trial court expressed a willingness to "cut [Appellant] a break" by reducing the amount of the fines by half. Trial Court's Hearing II, N.T.

---

[5] As discussed *infra*, given the nature of the proceedings below, the trial court's hearing – although taking place on the same day – was recorded in two separate transcripts. To avoid confusion concerning any overlapping pagination, the first transcript, contained in the Reproduced Record at 50a-55a, will be referred to as Trial Court's Hearing I. The second transcript, contained in the Reproduced Record at 56a-71a, will be referred to as Trial Court's Hearing II.

[6] For what it is worth, the City expressed that it had no desire to take on ownership of the Property given the City's purported ownership of 14,000 "nearly" condemned properties. Trial Court's Hearing II, N.T. at 6.

at 10-11. However, the trial court reconsidered its leniency upon learning of Appellant's dissatisfaction with having to pay any fine at all and upon discerning Appellant's lack of candor at the hearing. *See id*., N.T. at 14-15. Concerning the latter point, at first Appellant represented that he had only owned the Property since 2017. *Id*., N.T. at 7. The trial court pointed out, however, that the record contains a Notice of Condemnation for the Property dated *October 6, 2006*, addressed to Appellant. *Id*.; *see* O.R. at Item No. 8. When the trial court asked Appellant if he had owned the Property since 2006, Appellant responded with "Yes, sir . . . . I could have." Trial Court's Hearing II, N.T. at 7-8. Later on, Appellant attempted to cast doubt as to whether the City Inspector's photographs depicted the Property or that Appellant owned property at 308 Minton Street at all. *Id*., N.T. at 11-14 ("Now this one here, this 308 Minton . . . is not my house."). Thus, the trial court declined to reduce the costs and fines imposed by the Magisterial District Court and denied Appellant's appeal. *Id*.

On July 12, 2022, upon receiving Appellant's Notice of Appeal, the trial court issued a Pa.R.A.P. (Rule) 1925(b) order requiring Appellant to file a Rule 1925(b) Statement of Errors Complained of on Appeal (Statement) within 21 days. Appellant failed to do so. Thus, the trial court issued a Rule 1925(a) Opinion explaining its belief that Appellant had waived all issues on appeal. *See* Trial Court's Op. at 2.

Before this Court,[7] Appellant asserts that: (1) the Department of Court Records for Allegheny County's (DCR) failure to comply with Pennsylvania Rule

---

[7] In summary conviction matters, where the trial court has taken additional evidence in a *de novo* review, this Court's review is limited to considering whether the trial court abused its discretion or committed an error of law. *Commonwealth v. Halstead*, 79 A.3d 1240, 1242 (Pa. Cmwlth. 2013).

of Criminal Procedure (Rules of Criminal Procedure or Pa.R.Crim.P.) 114 (C)(2)(c) vitiated his failure to comply with the trial court's 1925(b) order; (2) the fines levied against him were excessive; and (3) he was denied his constitutional right to confront the witnesses against him. Appellant's Brief at 4.

In support of his first argument, Appellant argues that he never received notice of the trial court's Rule 1925(b) Order.[8] Appellant's Brief at 10. More importantly, Appellant posits, Pa.R.Crim.P.114(C)(2)(c) requires all docket entries to note the date of service for the court order or notice. Pa.R.Crim.P. 114(C)(2)(c). Here, however, the docket sheet contains no such notation concerning the trial court's Rule 1925(b) order. *Id*. at 11. In Appellant's view, then, our Supreme Court's decision in *Commonwealth v. Hess*, 810 A.2d 1249 (Pa. 2002), requiring strict adherence to the Rules of Criminal Procedure in order for Rule 1925(b) waiver to apply, controls. *Id*. at 12-13.

The Commonwealth summarily responds that the Rule 1925(b) order itself was dated July 12, 2022, and that the order's cover sheet indicates that the order was filed on July 15, 2022. Further, the same provides that copies of the order were sent to the parties at the correct addresses via first class mail. Commonwealth's Brief at 3. As such, the Commonwealth asserts that the trial court and the DCR complied with any and all requirements under the Rules of Criminal Procedure. *Id*.

Rule 1925(b) permits a trial court to enter an order directing an appellant to file "a concise statement of errors complained of on appeal." Pa.R.A.P. 1925(b). Typically, appellate courts are constrained to deem any issue automatically waived on appeal if the issue is not raised in the statement or where the appellant fails to file a timely statement altogether. *See, e.g.*, *Commonwealth v. Lord*, 719

---

[8] To this end, Appellant swears by affidavit, attached as exhibit A to his brief, that he never received the trial court's order.

A.2d 306, 309 (Pa. 1988); *Commonwealth v. Butler*, 812 A.2d 631, 633 (Pa. 2002). However, because litigants must strictly comply with Rule 1925(b), we have held that lower courts must strictly comply with any applicable notice requirements. *Schlag v. Department of Transportation*, 963 A.2d 598, 601-02 (Pa. Cmwlth. 2009) (citing *In re L.M.*, 923 A.2d 505, 509-10 (Pa. Super. 2007)).[9, 10] Thus, we will not consider an appellant's failure to file a timely Rule 1925(b) statement to be fatal to his appeal when the docket fails to show *when* the court provided notice of its Rule 1925(b) order as required by Rule 114. *Hess*, 810 A.2d at 1254-55.

Concerning the trial court's Rule 1925(b) order, the docket sheet pertinent here provides only the order's filing date. Original Record (O.R.) at Item No. 1; *see also* R.R. at 5a. The docket does not indicate the date of service notwithstanding Rule 114's requirement. In fact, contrary to the Commonwealth's arguments, nothing in the record before this Court indicates the date of service upon Appellant; the order's cover page provides only the order's filing date and the means of service, not the date of service. R.R. at 36a-37a. Even so, the Commonwealth's arguments would be immaterial as even actual notice of the trial court's Rule 1925(b) order "is not determinative under circumstances where the docket does not reflect that notice was sent." *L.M.*, 923 A.2d at 510. We will therefore consider whether the fines imposed were excessive.

---

[9] "Our Supreme Court has interpreted the rules surrounding Rule 1925(b) statements very strictly and has not hesitated to find waiver when a party does not conform precisely to these rules. *See, e.g.*,[*Commonwealth v. Schofield,* 888 A.2d 771, 773–74 (Pa. 2005)]. Fairness dictates that we should also strictly interpret the rules applicable to the court." *L.M.*, 923 A.2d at 510.

[10] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Compensation Board of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

On this point, Appellant argues that Section 1001.10 of the Code limits fines for violations of its title to $1,000.00 per violation, such that the fines imposed for two counts should not exceed $2,000.00. Appellant's Brief at 19-20. The Commonwealth briefly rejoins that the Code treats each day that a violation continues as a separate offense such that the fines levied against Appellant are permitted under the Code. Commonwealth's Brief at 4.

While not squarely implicated here, our Constitution requires that fines must be reasonably proportionate to the crimes which occasion them. *Commonwealth v. Eisenberg*, 98 A.3d 1268, 1287 (Pa. 2014); Pa. Const., art. 1, §13.

> [T]he primary purpose of a fine or a penalty is twofold[:] to punish violators and to deter future or continued violations. Since it serves not only as a punishment but also as a deterrent, the amount of the fine can be raised to whatever sum is necessary to discourage future or continued violations, subject, of course, to any restriction imposed on the amount of the fine by the enabling statute or the Constitution.

*Id.* (quoting *Mastrangelo v. Buckley*, 250 A.2d 447, 464 (Pa. 1969)).

To that end, the Code provides:

> Any persons, firm or corporation violating any of the provisions of this Title, which are not covered under [S]ection 903 of Act 45 (35 P. S. § 7210.903), shall, upon conviction thereof before any City Housing or Police Magistrate be fined not more than one thousand dollars ($1,000.00) and costs for each and every violation or non compliance, and in default of a payment of such fine and costs shall be imprisoned for not more than ninety (90) days for each offense. **Each day's violation shall constitute a separate offense.** The imposition of a penalty shall not excuse the violation or permit it to continue, nor shall the imposition of a penalty be held to bar any other remedies provided by this Title.

7

Pittsburgh's Code §1001.10(a) (emphasis added). Finally, we have consistently upheld the cumulative nature of zoning code violations. *See City of Philadelphia v. DY Properties, LLC*, 223 A.3d 717, 724-35 (Pa. Cmwlth. 2019); *see also Commonwealth v. Dennis*, (Pa. Cmwlth., No. 1873 C.D. 2013, filed October 9, 2014), slip op. at 28-29.[11]

Here, while Appellant correctly notes that the Code caps fines for any violation under the relevant title at $1,000.00 per violation, he ignores the pertinent provision treating each day's violation as a separate offense. Given the Code's express terms and given that the structure on Appellant's Property has been condemned since *2006*, we cannot conclude that the trial court abused its discretion or committed an error of law in upholding the Magisterial District Court's fines. Indeed, under these circumstances, the trial court may have been justified in *increasing* the fines and costs imposed to discourage continued violations.

Finally, relying on his right to confront the witnesses against him under the Pennsylvania Constitution, Pa. Const. art. 1, §9,[12] Appellant asserts that the trial court prevented Appellant from confronting the City's Inspector as to whether the photographs offered by the City at the hearing were indeed photographs of Appellant's Property. Appellant's Brief at 16-17. The Commonwealth responds

---

[11] *See* Pa. R.A.P. 126(b)(1)-(2) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. [] Non-precedential decisions . . . may be cited for their persuasive value.").

[12] Article 1, section 9 of the Pennsylvania Constitution provides in relevant part:

> In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to be confronted with the witnesses against him . . . .

Pa. Const. art. 1, §9.

8

that Appellant did have the opportunity to confront the City's Inspector, but Appellant squandered the opportunity by failing to appear before the trial court when the case was called at the head of the list. Commonwealth's Brief at 4.

We decline to address the merits of this issue, however. While Appellant's failure to file a Rule 1925(b) Statement may not have resulted in all issues being waived on appeal, the following still holds true: "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." *Rutledge v. Department of Transportation*, 508 A.2d 1306, 1307 (Pa. Cmwlth. 1986) (quoting Pa.R.A.P. 302(a)); *see also Commonwealth v. Rosser*, 135 A.3d 1077, 1086 (Pa. Super. 2016) (appellant's failure to assert confrontation clause defense in the lower court results in issue waiver on appeal).

In the instant matter, upon the trial court reopening the hearing, Appellant objected to the fines as being excessive, but he never claimed that he was unable to confront the City's Inspector or that he was being denied a constitutional right to do so. Further, given the number of procedural opportunities at which Appellant failed to raise this claim before that court, we will not consider this claim for the first time in this appeal. *See Siegfried v. Borough of Wilson*, 695 A.2d 892, 894 (Pa. Cmwlth. 1997) ("The appellate court may *sua sponte* refuse to address an issue raised on appeal that was not raised and preserved below.").

Accordingly, the trial court's order is affirmed.


                                         _____

                                         MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania     :
                                 :
              v.                 :  No. 708 C.D. 2022
                                 :
David L. Fields,                 :
                                 :
                    Appellant    :


**O R D E R**


AND NOW, this 19th day of September, 2025, the June 7, 2022 Order of the Allegheny County Court of Common Pleas is **AFFIRMED**.


_____
MICHAEL H. WOJCIK, Judge